MERRITT C. STANTON, Appellant, *v.* THE BOARD OF SUPERVI-
SORS OF THE COUNTY OF ESSEX, Respondent.

1. CONSTITUTIONAL LAW — CONSTITUTIONAL PROVISION THAT "THE
LEGISLATIVE POWER OF THIS STATE SHALL BE VESTED IN A SENATE AND
ASSEMBLY " — CONSTRUCTION AND EFFECT THEREOF.   The constitutional
provision (N. Y. Const. art. 3, § 1) that "The legislative power of this
state shall be vested in a Senate and Assembly," was adopted to insure
a representative form of government within this state.   It applies to all
enactments, strictly and exclusively legislative, pertaining to and affect-
ing the whole state or any integral part thereof, but it does not prohibit
the legislature from exercising powers, or enacting laws, which are not
strictly legislative; nor does it prohibit the legislature from delegating to
inferior governmental bodies, or to the people of limited localities, powers
and functions which, although legislative in form, are in their nature
administrative rather than strictly and exclusively legislative.

2. SAME — COUNTY LAW (L. 1892, CH. 686, §§ 31, 32, 33) — PROVISION
REQUIRING THE QUESTION OF THE REMOVAL OF COUNTY BUILDINGS TO
BE SUBMITTED TO THE ELECTORS OF THE COUNTY — NOT IN CONFLICT
WITH STATE CONSTITUTION (ART. 3, § 1).   The provision of the County Law
(L. 1892, ch. 686, §§ 31, 32, 33), relating to the changing of the site of
county buildings and offices from one part of a county to another, and
providing that, after such change has been approved by the board of
supervisors of the county by a resolution adopted by a majority of all

the members elected thereto, the question of the proposed removal shall "be submitted to the electors of the county at the ensuing general election" to "be voted on" by such electors at such election "by ballot," and "if a majority of the ballots cast shall be in favor of such removal, the proceedings of such board of supervisors shall be deemed ratified by the electors, and the change of the site of such buildings, or the removal of such offices, shall be made accordingly," is not such a delegation of legislative power to the people that it constitutes a violation of the constitutional provision vesting the legislative power of the state in a senate and assembly (N. Y. Const. art. 3, § 1). The line of demarcation between legislative and administrative functions may not always be easily discerned, but the deciding upon, or the fixing of, the site of county buildings, is in its nature administrative and is not strictly and exclusively a legislative power within the meaning of the Constitution.

*Stanton* v *Board of Supervisors*, 112 App. Div. 877, affirmed.

(Argued March 12, 1908; decided March 31, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 8, 1906, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis A. Smith* and *Richard Lockhart Hand* for appellant. The provisions of the County Law (L. 1892, ch. 686), so far as they relate to removal of a county seat more than one mile and beyond the limits of the incorporated village where already situated, are unconstitutional and void. They are a surrender of legislative power and an attempt to confer that power upon the electors of a county. This is a violation of the Constitution, and can, therefore, have no effect. (Const. of N. Y. art. 3, § 1; art. 3, § 18; *Barto* v. *Himrod*, 8 N. Y. 483; *People* v. *Stout*, 23 Barb. 350; *Thorne* v. *Cramer*, 15 Barb. 112; *Bradley* v. *Baxter*, 15 Barb. 122; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *People* v. *Suprs. of St. Lawrence Co.*, 25 Hun, 131; *People ex rel. Hotchkiss* v. *Suprs.*, 65 N. Y. 222; *People ex rel.*

*O'Connor* v. *Suprs.*, 153 N. Y. 370 ; *People ex rel. Vil. of Jamaica* v. *Suprs. of Queens Co.*, 131 N. Y. 468.)

*Edward T. Stokes* for respondent. The provisions of sections 31, 32 and 33 of the County Law for submission to the electors of the question of the removal of a county seat are not unconstitutional. (*Territory* v. *Mojave County*, 12 Pac. Rep. 730 ; *Black* v. *Buncombe Co.*, 129 N. C. 121 ; *Ex parte Hill*, 40 Ala. 121 ; *Clark* v. *Jack*, 60 Ala. 271 ; *Lake Co.* v. *State*, 24 Fla. 263 ; *Upham* v. *Suprs.*, 8 Cal. 379 ; *Barnes* v. *Suprs.*, 51 Miss. 305 ; *Comm.* v. *Painter*, 10 Penn. St. 214 ; *Walker* v. *Tarrant Co.*, 20 Tex. 16 ; *Hall* v. *Marshall*, 4 Ky. L. Rep. 502 ; *People* v. *Salomon*, 51 Ill. 37.)

HAIGHT, J. The plaintiff, as a taxpayer of the county of Essex, brings this action to restrain the board of supervisors from carrying into effect a resolution passed by the board removing the county seat from Elizabethtown to Westport.

Various questions are raised with reference to the regularity of the proceedings under which the removal of the county seat was authorized which we think were properly disposed of by the trial court, and further discussion of them we deem unnecessary. There remains, however, one question of public importance which requires consideration, and that is the contention that the provision of the County Law, with reference to the removal of county seats, is unconstitutional.

The provisions of the County Law, so far as now material, are as follows: " The board of supervisors may, except in the county of Kings, by a majority vote of all the members elected thereto, fix or change the site of any county building, and the location of any county office ; but the site or location of no county building or office shall be changed when the change shall exceed one mile, and shall be beyond the boundaries of the incorporated village or city, where already situated, except upon a petition of at least twenty-five freeholders of the county, describing the buildings or office, the site or location of which is proposed to be changed, and the

place at or near which it is proposed to locate such new build-
ings or office; which petition shall be published once in each
week for six weeks immediately preceding an annual or spe-
cial meeting of such board.  *  *  *  On the presentation
of such petition and notice, with due proof of their publica-
tion, if a majority of all the members elected to such board
vote in favor of a resolution for the removal of the site of
the buildings described in such petition, to the site also therein
described,  *  *  *  said board shall thereupon direct that
such resolution, together with the notice that the question of
such removal will be submitted to the electors of the county
at the ensuing general election, be published in at least two
newspapers published in the county to be designated by the
board, once in each week for six consecutive weeks immedi-
ately preceding such general election.  *  *  *  The question
of the removal of the site of such buildings, or the change
of the location of any such office, shall thereupon be voted
on by the electors of the county at such general election by
ballot.  If a majority of the ballots cast shall be in favor of
such removal, the proceedings of such board of supervisors
shall be deemed ratified by the electors, and the change of
the site of such buildings, or the removal of such offices, shall
be made accordingly."  (The County Law, §§ 31, 32, 33, L.
1892, ch. 686.)  The contention is that these provisions are
violative of the Constitution, for the reason that, by requiring
a vote of the people to determine whether the action of the
supervisors in authorizing the removal of the county build-
ings shall be ratified, is a delegation of the legislative power
to the people.

Article III, section 1, of the Constitution provides that
" The legislative power of this state shall be vested in a senate
and assembly."  The government, as organized under the
Constitution, was designed to be that of a representative
republic.  Under the clause of the Constitution referred to
the legislature is prohibited from converting it into a pure
democracy, under which the people frame and enact their
own laws.  The organization of the law-making power is one

of the principal purposes of a constitutional charter, and this is effected by means of a system of representation by which the people at stated periods delegate to citizens chosen by them the power of enacting laws by which all are to be governed. The senators and assemblymen are selected by the electors of their respective districts to represent them in the legislature of the state and to enact such laws as shall be requisite and advisable. The people, who have intrusted them with legislative power, have the right to demand the exercise of their knowledge, judgment and discretion in the framing and in the enactment of laws, and in so far as their duties are strictly legislative, have prohibited them from delegating that power to others. It was, consequently, held in *Barto* v. *Himrod* (8 N. Y. 483) that an act establishing free schools. throughout the state was unconstitutional and void, for the reason that the fact of its becoming a law was made to depend upon the result of a popular vote. (See, also, *People* v. *Stout,* 23 Barb. 350 ; *Thorne* v. *Cramer,* 15 Barb. 112, and *Bradley* v. *Baxter,* 15 Barb. 122.) It will be observed, however, that while the provision of the Constitution in question vests in the senate and assembly legislative power it does not prohibit the legislature from exercising powers or of enacting laws which are not strictly legislative. As was said by Chief Justice MARSHALL in *Wayman* v. *Southard* (10 Wheat. 1, 42) : " It will not be contended that Congress can delegate to the courts or to any other tribunal powers which are strictly and exclusively legislative ; but Congress may certainly delegate to others powers which the legislature may rightfully exercise itself. \* \* \* The courts, for example, may make rules directing the return of writs and process, the filing of declarations and other pleadings and other things of the same description. It will not be contended that these things might not be done by the legislature without the intervention of the courts, yet it is not alleged that the power may not be conferred on the judicial department."

It is not our purpose, nor shall we here attempt, to define

the powers of the legislature, or to determine which powers are strictly legislative and which are not, further than the necessities of this case require. We have only to refer to the history of legislation which has been sanctioned by the courts to establish the fact that its powers have been extended over a wide field covering all the departments of government, the administrative or executive branch, as well as that of the judicial. Not only has the legislature largely done away with the rules of the courts prescribing practice, by the adoption of a code of procedure, but it has assumed to direct the order in which cases pending in courts shall be determined, by providing from time to time, that a certain class of cases shall be preferred. We thus have the legislature exercising functions which had theretofore been considered judicial and which devolved upon the courts the duty of determining the order in which they would hear the cases pending before them ; so, also, has the legislature time and again, with the sanction of the courts, exercised administrative or executive functions. It has not only passed laws regulating the police powers of the state, but it has prescribed the duties which control the policemen in their action. It has not only regulated the sale of strong and spirituous liquors under the general police powers of the state, but it has provided that localities may, by popular vote, determine for themselves whether or not any license shall be granted in their respective localities. Not only has it authorized the laying out of highways, but it has itself laid out roads and specified their metes and bounds. It may not only give to boards of supervisors the power of legislation within certain limits, but it may create municipal corporations and confer upon them the right of local government and the power to make by-laws and ordinances not inconsistent with the laws of the state. It may determine that gates shall be established upon streets wherever necessary at the place of railroad crossings at grade. It may fix the site of a court house, appoint a commission to construct it and issue the bonds of the county for the payment of the expenses.

(*Village of Gloversville* v. *Howell*, 70 N. Y. 287 ; *People* v. *L. I. R. R. Co.*, 134 N. Y. 506; *People ex rel. Board of Commissioners, etc.,* v. *Board of Supervisors of Oneida Co.*, 170 N. Y. 105; 6 Am. & Eng. Ency. of Law [2d ed.], p. 1021, and see authorities there cited.)

In *Bank of Rome* v. *Village of Rome* (18 N. Y. 38) it was held that the Constitution does not, in terms, or by necessary intendment, restrain the legislature from conferring upon the municipal authorities the power to subscribe to stock of a railroad corporation and to raise the necessary funds by taxation ; that an act which, by its terms, is to take effect immediately, but which confers upon the authorities of the municipality certain powers not to be exercised until such act has been approved by vote of the inhabitants, is constitutional and is not a delegation of legislative power within the case of *Barto* v. *Himrod* (*supra*).

In *Bank of Chenango* v. *Brown* (26 N. Y. 467) it was held that chapter 426 of the Laws of 1847, section 92, authorizing the electors of an incorporated village to determine what sections of the general act for the incorporation of villages shall apply to their village, is valid and constitutional, and is not a delegation of legislative power, but a tender to those municipalities of such specific amendments to their respective charters as they elect to accept. And in the case of *Clarke* v. *City of Rochester* (28 N. Y. 605) it was held that an act authorizing the city to subscribe for and become the purchaser of the stock of the Rochester and Genesee Valley Railroad Company to an amount specified, was constitutional and valid, notwithstanding the provision that the act should not take effect until it had been submitted to the electors for the purpose of determining whether or not it was expedient for the city to borrow money for the purpose specified. DENIO, Ch. J., in delivering the opinion of the court, says : " The legislature cannot commit the power of enacting laws to any other body than itself, not even to all the electors of the state ; and that this principle cannot be evaded by a statute which shall prescribe the details of a particular legislative act, and then provides-

that the question whether it shall be established as law, shall be determined by a vote of the electors. * * * That purpose is expressed in the Constitution of this state, by the declaration that the legislative power shall be vested in the senate and assembly. But all general reasoning is rendered unnecessary by the explicit determination in the case of *Barto* v. *Himrod.* But while general statutes must be enacted by the legislature, it is plain, the power to make local regulations, having the force of law, in limited localities, may be committed to the other bodies representing the people in their local divisions, or to the people of those districts themselves. Our whole system of local government in cities, villages, counties and towns, depends upon that distinction. The practice has existed from the foundation of the state, and has always been considered a prominent feature in the American system of government. It is recognized in the Constitution itself, in the section which prescribes to the Legislature the duty to provide for the organization of cities and incorporated villages, etc., restricting their power of taxation and borrowing."

We thus have distinctly presented the difference between enactments pertaining to the whole state and those pertaining to localities, and such distinction is not left to those which are local or general laws; for general laws may be and in certain cases must be enacted, which pertain to localities only. And especially is this true with reference to county seats; for the legislature is prohibited from passing any private or local bill locating or changing county seats. (Const. art. 3, § 18.) While it may not be necessary, the legislature has generally recognized the right of the electors of a county to select and locate their own county buildings. They, of all persons, can best determine the place that would be most accessible and convenient for the transaction of the business of the county. There is, therefore, a manifest propriety in making a change dependent upon an affirmative vote of a majority of the electors.

While we are of the opinion that the power to submit to the electors the location of the county seat, is sanctioned

under the authorities to which attention has been called, we are also of the opinion that the selecting of a site for the removal of the county buildings is an administrative act and is not strictly and exclusively a legislative power. This was distinctly held in the case of *Rice* v. *Shay* (43 Mich. 380) in which GRAVES, J., in delivering the opinion of the court, while conceding that the power to locate the county seat might be exercised by the legislature, says: "Its duty in this regard is administrative rather than strictly legislative. It is not bound to proceed in a body to make a personal view, or required to send a committee of its own members to see and report. It may, as was done in this case, prescribe the site approximately and then leave it to commissioners of its own selection to fix the exact spot."

The legislative powers, with reference to administrative matters, have recently been the subject of consideration in this court in *Matter of Trustees of Vil. of Saratoga Springs* v. *Saratoga Gas, E. L. & P. Co.* (191 N. Y. 123) in which it was held that the legislature may appoint a commission to ascertain and determine, within reasonable bounds, the price that shall be charged for gas in various localities.

The line of demarcation between legislative and administrative functions may not always be easily discerned, but in this case it appears to us that the deciding upon, or the fixing of, the site of county buildings, is in its nature administrative and is not strictly and exclusively a legislative power within the meaning of article III, section 1, of the Constitution.

The judgment should, therefore, be affirmed, with costs.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.