STEPHEN R. CLEVELAND, Individually and as Commissioner of the Board of Water Works of the City of Watertown, et al., Plaintiffs, *v.* THE CITY OF WATERTOWN, ISAAC R. BREEN, as Mayor, et al., Defendants.

(Supreme Court, Jefferson Equity Term, February, 1917.)

Statutes — validity of, how determined — city of Watertown — Optional City Government Law held unconstitutional — State Constitution, art. XII, § 1.

The validity of a statute is to be determined not by what has been done or what probably will be done but by what it is possible to do under its provisions.

Tested by the rule above stated, the " Optional City Government Law " (Laws of 1914, chap. 444), by the terms of which the electors of cities of the second and third class are permitted to vote on the adoption of any one of several forms of city government designated in said statute and which takes away the qualified negative of the mayor over hasty and inconsiderate action by the common council and confers autocratic power on that body to govern the city in such manner and by what means as it pleases without any limitation or restraint whatever save as to granting franchises, the sale or leasing of real estate, the incurring of municipal indebtedness and submitting propositions to the vote of electors or taxpayers and by which all provisions of the charter and of general or special laws in relation to the form of government of a municipality are superseded, is unconstitutional and void so far as applicable

to the city of Watertown created by chapter 760 of the Laws of 1897, and a taxpayer's action lies to perpetually enjoin and restrain the officials thereof from organizing the city government under the provisions of said " Optional City Government Law."

A provision of the said " Optional City Government Law," which permits the city council to do away with the restriction of the power of taxation in municipalities and fails to provide any limitation in its place, clearly violates the express command of section 1 of article XII of the State Constitution and cannot be held to be a valid legislative act.

Granting that there are some features of said statute which in and of themselves would not be inimical to the Constitution the invalid provisions are so connected with the general purposes of the act and are so interwoven among its provisions that they destroy the whole act, and, as to eliminate the invalid provisions would be to divest the statute of its most essential features, the whole statute must be condemned.

TAXPAYERS' action to restrain the officers of the city of Watertown from organizing the city government under and pursuant to the provisions of chapter 444, Laws of 1914, known as the Optional City Government Law.

Cobb & Cosgrove, for plaintiffs.

Harold L. Hooker, for defendants.

Laurence Arnold Tanzer and Winifred T. Denison, *amici curiæ*, representing Municipal Government Association of New York State.

EMERSON, J.   The city of Watertown now exists by virtue of an amended charter passed in 1897, being chapter 760 of the laws of that year. In the year 1914 the legislature enacted chapter 444, Laws of 1914,

known as " The Optional City Government Law," by the terms of which the electors of cities of the second and third class were permitted to vote on the adoption of any one of several forms of city government, known respectively as plans A, B, C, D, E, F and G.

The statute further provided that, upon filing with the common council a petition therefor, the city clerk was required to transmit a certified copy of said petition to the commissioners of elections, who should cause the question proposed by such petition to be submitted to a vote of the electors, and, if a majority of the votes cast upon the proposition was in favor of its adoption, the officers provided for in the plan so adopted should be elected at the next general city election and their terms of office should commence on the first day of the second calendar month thereafter, and thereupon the terms of all other city officers should expire, except the members of the board of education and city clerk, and all provisions of the city charter and of all general and special laws inconsistent with said Optional City Government Law should be superseded.

In the fall of 1915, upon a petition therefor, the electors of said city voted upon the proposition to adopt plan C as specified and described in said act, and a majority of the votes cast were in favor of the adoption of that plan.

It is conceded that the time to organize under the Optional City Government Law, as provided in said plan, was extended one year by the legislature, and the executive officials of said city now threaten to carry said plan into execution by the election of the officers therein provided for at the next general election.

The plaintiffs, who are taxpayers of the city, and also officials of the city who will be legislated out of

office by the operation of said optional city plan, now bring this action and ask that the city officials who are charged with that duty be restrained from holding such election and from organizing the city under said Optional City Government Law on the ground that said act is unconstitutional and, therefore, void. A suit now lies at the instance of any taxpayer to restrain illegal official action or waste of the public funds. Code Civ. Pro. § 1925; Gen. Mun. Law, § 51; *Brill* v. *Miller,* 140 App. Div. 602; *Matter of Reynolds,* 202 N. Y. 440, 441.

An unconstitutional law is absolutely void and, therefore, no law at all. It is the same as if the law had never been passed. *Newell* v. *People,* 7 N. Y. 95.

If, therefore, the Optional City Government Law is invalid, any action taken by the city officials to carry out the same would not only be unlawful but would involve a waste of the public funds. Taxpayers' suits to restrain such action have been frequently upheld under similar conditions. *McCutcheon* v. *Terminal Station Commission,* 168 App. Div. 301, 306; *Andrews* v. *Pierson,* 174 id. 478, 481; *Gibbs* v. *Luther,* 81 Misc. Rep. 612; *Stanton* v. *Board of Supervisors,* 191 N. Y. 430.

The question thus presented involves an inquiry as to the provisions of the present city charter and the method of city government therein provided, and also the provisions of the Optional City Government Law, and the changes sought to be accomplished by that act. The question will then arise whether, under the Constitution, the legislature had authority to pass the latter act and to authorize the changes in the city government which it is proposed to make.

From an examination of the present revised city charter we find that it provides at great length and

with much detail for the government of the municipality and places many restraints upon the governing body in the interest of the residents and taxpayers of the city. It provides that the elective officers shall consist of a mayor, president of the common council, an alderman and supervisor from each ward, a city judge and three assessors. The aldermen thus chosen are to constitute the common council, over which the president is to preside. The common council is vested with all legislative powers pertaining to the city and also with all powers conferred by the general statutes of the state. The method of city government is set forth at length and it is provided that when the manner of executing the same is not expressly stated in the charter the same shall be provided for by ordinances or resolution of the common council. The common council is also authorized to enact ordinances for any local purposes pertaining to the government of the city, the management of its business and the preservation of the order, peace, health, safety and welfare of its inhabitants, and, to that end, the charter sets forth at great length the subjects on which it is authorized to enact ordinances. The common council is also given the management and control of the finances of the city, including the making up of the annual tax levies, and is invested with all the powers of the board of supervisors in relation to the correction of the city assessment rolls. It is, however, provided that there shall be no raising or expenditure of money except as expressly authorized by the charter, and that the tax to be levied for municipal purposes shall in no event exceed one dollar and seventy cents upon every one hundred dollars of the assessed valuation of the taxable property in the city. The common council has no power to direct any extraordinary expenditure except

upon a two-thirds vote of its members, nor until such an expenditure has been authorized by the taxpayers at a special election held for that purpose, nor can it borrow any money except as specially authorized by the charter, save in anticipation of taxes then remaining unpaid.

The mayor is made the executive head of the city with a qualified veto over the proceedings of the common council, while the assessors are invested with all the powers and duties of town assessors under the statutes and general laws of the state.

The appointive officers are declared to be a city attorney, treasurer, clerk, engineer, sealer of weights and measures, constables, pound master, commissioners of deeds, city hall janitor, and five commissioners for each of the following boards, viz., public works, health, safety, charity, education and water works, all of whom are to be appointed by the mayor with the consent of the common council. The Public Health Law, as amended in 1913, changed the constitution of the board of health to the mayor and six commissioners to be appointed by the common council upon the nomination of the mayor, but, as so changed, the complexion of the boards remains as above stated. The duties of these city officials are largely of a local character and, therefore, need not be considered here, with the exception of the treasurer and various administrative boards above mentioned.

The city treasurer is declared to be the fiscal officer of the city. He is invested with all the powers and duties of town collectors and is required to collect all taxes levied in the city. He is required to pay over weekly to the county treasurer all taxes collected for state and county purposes and in the meantime all taxes collected by him in excess of $100 must be

Supreme Court, February, 1917.          [Vol. 99.

deposited daily in some bank designated by the common council. He is also forbidden to pay out any of the city funds except upon warrants drawn by the common council or some administrative board, which warrants must be countersigned by the city clerk and specify from what fund and for what purpose the same is drawn.

As to the boards above mentioned, the charter declares that they shall be the administrative boards of the city. The board of public works is invested with all the powers and performs all the duties of commissioners of highways in towns. The board of water works has charge of the water system of the city. The board of public safety performs all the duties connected with the police government and discipline of the city and also with the fire department service. The board of health is invested with all the powers and is charged with all the duties conferred upon local boards of health by existing laws, while the board of charities is charged with all the duties of overseers of the poor in towns.

There are many other duties specified in the charter to which it is unnecessary to refer. Those above mentioned have been stated at considerable length in order that it might be understood just what changes in municipal government it was proposed to make by the Optional City Government Law. Turning now to that statute we find that it enacts as follows:

By section 3, that any city which shall adopt one of the methods of government provided in said chapter shall thereafter be governed by the provisions thereof.

By section 4, that none of the legislative powers of a city shall be abridged or impaired by the act, but all such powers are devolved upon such body as shall be the legislative body of the city.

By section 5, that the existing corporate powers of the city shall not be abridged or impaired by the act, but shall be exercised as herein provided.

By section 7, that all existing ordinances, orders or resolutions at the time the provisions of the act take effect and not inconsistent therewith shall continue in full force and effect until repealed, modified or otherwise suspended.

By section 8, that so far as inconsistent with said act all provisions of the charter and special or general laws are superseded, but where the same are not inconsistent with the act they shall continue in full force and effect until and unless superseded by the passing of ordinances regulating the matters therein provided for.

By section 23, that when a city shall vote to adopt any one of the plans provided for in that act the provisions thereof shall supersede the provisions of the charter and of all general and special laws as soon as the officers there provided for have been elected and their terms of office have commenced, which terms of office are to commence on the first day of the second calendar month succeeding their election, at which time the term of office of each elective officer of the city then in office shall expire.

By section 36, that the legislative power of the council of the city may be exercised by ordinance or rule adopted by the council, and, by section 37, that, until superseded as provided in said act, all provisions of law regulating the exercise of powers and performance of the duties of the officers and employees of the city shall continue in full force and effect. That the council to be selected under plan C shall have power to confer or impose by ordinance upon any officer or employee of the city any duties theretofore conferred

or imposed upon any officer or employee by provision of law, which powers or duties shall thereupon devolve upon and be discharged by the officer or employee on whom the same shall have been conferred or imposed. But that the provisions of law regulating the exercise of such power or the performance of such duties shall, until superseded as therein provided, continue in force, and that whenever by such ordinance all the powers and duties of any appointive officer or employee of the city are conferred or imposed upon one or more officers or employees, such ordinance may abolish such office or employment and thereupon the term of office or employment of such officer or employee shall expire. That the council under said plan C shall have power to regulate by ordinance the exercise of any power or the performance of any duty by any officer or employee of the city and that, upon passing any such ordinance, every provision of the charter regulating the matters or any of them shall cease to have any force or effect in the city, provided, however, that nothing therein contained shall be deemed to authorize the repeal or superseding of any provision regulating the granting of franchises, the sale or leasing of real estate, the incurring of municipal indebtedness, or the provisions of law requiring any matter to be submitted to a vote of the electors or taxpayers.

Section 43 provides that the council shall succeed to all the powers and perform all the duties of the board of assessors.

Section 86 says that upon the adoption of plan C such plan shall become operative as prescribed in section 23, and the powers of government shall be exercised as provided in said act.

Section 87 says that all the legislative powers of the

city, however conferred or possessed, are vested in a board to be known as the council of the city, composed of a mayor and four councilmen, all of whom shall be elected at large and shall be for all purposes the common council of the city.

Section 89 says the mayor shall have no power of veto, but he shall preside over the council and have a vote as a member of the same, while sections 90, 91, 92 and 93 declare that all administrative and executive powers of the city shall be vested in a city manager to be appointed by the council, with full power to determine what officers or employees are necessary and to appoint or remove the same, which officers or employees shall perform such duties as may be required by the city manager under general regulations of the council.

As a résumé of these provisions of the Optional City Government Law it will be seen that a mayor and four councilmen are to be chosen, who take their offices on January first, and thereupon the term of office of every elective officer of the city expires, and all provisions of the charter and of general or special laws in relation to the form of government of the municipality are superseded. The council thus elected is to select a city manager who administers all of the affairs of the city. The council is also to exercise all of the legislative powers of the city by ordinance or rule. Until such time as it passes ordinances upon the subject the former provisions of law regulating the exercise of powers and the performance of duties by officers and employees of the city continue in full force and effect, but when the council does pass ordinances upon the subject every provision of the charter upon that subject ceases to have any force or effect in the city, except the provisions of law regulating the grant-

ing of franchises, sale or leasing of real estate, incurring municipal indebtedness and submitting propositions to the vote of electors or taxpayers. The validity of a statute is to be determined, not by what has been done or what probably will be done, but by what it is possible to do under its provisions. *Stuart* v. *Palmer*, 74 N. Y. 188; *People* v. *Klinck Packing Co.,* 214 id. 138, 139; *People ex rel. Luyster* v. *Cocks,* 172 App. Div. 737.

Tested by this rule we see that the act itself takes away the qualified negative of the mayor over hasty and inconsiderate action by the council, that all limitation and restraint upon the council is removed, and that it has power to pass ordinances having the force of law of whatever nature or kind it pleases. In fact the council is authorized to govern the city in just such manner and by just what means as it pleases without any limitation or restraint whatever, save as to granting franchises, the sale or leasing of real estate, the incurring of municipal indebtedness and submitting propositions to the vote of electors or taxpayers, as above stated. In determining the validity of statutes the law looks to the substance rather than to the form. *People ex rel. Bolton* v. *Albertson,* 55 N. Y. 50; *People ex rel. Denny* v. *Coler,* 173 id. 115.

It is an interesting question, in view of the autocratic powers thus conferred upon the council, whether such a law furnishes the city with the kind of government which is guaranteed by the Federal Constitution.

But, passing this question, there are other reasons which seem unanswerable why this statute cannot be upheld. By the Constitution of the state all legislative power is vested in the senate and assembly. Const. art. 3, § 1.

It is well settled that by investing said bodies with

legislative power the people trust to their judgment and discretion and that, therefore, in matters strictly legislative the power to legislate cannot be delegated. *Stanton* v. *Board of Supervisors,* 191 N. Y. 428, 432; *Wayman* v. *Southard,* 10 Wheat. 1, 42, per Marshall, Ch. J.; Cooley Const. Lim. 116.

But the legislature possesses powers that are not strictly legislative and, therefore, it is a well settled exception to the rule that the power to make local regulations, having the force of law in limited localities, may be delegated by the legislature to those localities. It is upon this distinction that our whole system of local self government for cities, towns and villages depends. *Clarke* v. *City of Rochester,* 28 N. Y. 634; *Stanton* v. *Board of Supervisors,* 191 id. 428; *Village of Saratoga Springs* v. *Saratoga Gas, E. L. & P. Co.,* Id. 138.

This delegated power, however, only extends to the management of their own local concerns under the charter and regulations that the legislature has provided. The distinction between powers purely municipal that can be delegated and those which involve state functions and, therefore, cannot be delegated is stated in *McGrath* v. *Grout,* 69 App. Div. 314, 320. The former is said to relate to matters of local government and local concern with which the state at large has no specific duties to perform and with which it has no general concern, while the latter includes matters in which the state at large has an interest, such as questions relating to the public health, education, taxation and the like, which are, therefore, said to involve state functions. This distinction is also adverted to and emphasized by the Court of Appeals in *Stanton* v. *Board of Supervisors,* 191 N. Y. 435.

If the powers sought to be exercised, while in form

Supreme Court, February, 1917.      [Vol. 99.

of a local character, in fact concern the people at large, or if they involve the performance of functions which are of a state character, they cannot be delegated to the municipality. Otherwise it would be legislating for the state at large and not solely for itself. The judgment and discretion thus exercised would be that of the municipality and not of the legislature, which would involve a delegation of legislative power that it is not competent for the legislature to make. But notwithstanding the powers which may lawfully be delegated to the municipality it must still look to the legislature for its charter and it cannot prescribe for itself in detail the method of its municipal government. Speaking upon this subject a distinguished writer says:

" The legislature in these cases is not regarded as delegating its authority, because the regulation of such local affairs as are commonly left to local boards and officers is not understood to properly belong to the State; and when it interferes, as sometimes it must, to restrain and control the local action, there must be reasons of State policy or dangers of local abuse to warrant the interposition. The people of the municipalities, however, do not define for themselves their own rights, privileges, and powers, nor is there any common law which draws any definite line of distinction between the powers which may be exercised by the State and those which may be left to the local governments.

" The municipalities must look to the State for such charters of government as the legislature shall see fit to provide; and they cannot prescribe for themselves the details, though they have the right to expect that those charters will be granted with a recognition of the general principles with which we are familiar." Cooley Const. Lim. 191.

A municipal corporation is merely a local division of the state vested with certain rights of self government in regard to their local and internal concerns. These corporations the legislature is authorized to create and for that purpose it must furnish them with a charter which is the franchise for their existence and provide for them the method of their self government. All of these functions are strictly legislative and cannot be delegated by the legislature. But, having thus organized the municipality and furnished it with the means of self government, the details of administration come within the domain of delegated powers.

It is, however, urged by the counsel for the defendant that this statute does not delegate any powers other than local and municipal. That it does not relate at all to the organization of the city as a municipal corporation, but simply to the manner in which municipal duties shall be performed. I do not so read the act in question. On the contrary, the provisions of section 3, that cities which adopt that plan of government shall thereafter be governed by the provisions of that chapter; of section 4, that all legislative powers of the city shall be possessed and exercised by such body as shall be provided under the terms of the act; of section 5, that the existent corporate powers of the city shall not be construed to have been abridged or impaired by the act but such powers shall be exercised as therein provided; of section 23, that upon the adoption of the plan of city government therein provided the same shall supersede the provisions of the charter and all general and special laws relating thereto and inconsistent therewith, and of section 37, that, where ordinances are passed by the council upon any subject, every provision of the charter relating to the matters

provided for in such ordinances shall cease to have any force or effect in such city, all tend to the inevitable conclusion that the intention of the statute was to substitute an entirely new charter and form of municipal government for the city.

This would not affect the continuity of the corporation but would involve the exercise of legislative powers which, as we have seen, are vested solely in the legislature by the Constitution and could not, therefore, be delegated to the municipality.

It is also said that this act can be sustained on the theory that the legislature has itself authorized such a plan of city government as should be put in operation under the act, leaving it to the municipality to provide the details of such plan, and, therefore, it is claimed that there has been no delegation of legislative powers.

It was held in the leading case of *Barto* v. *Himrod,* 8 N. Y. 483, that an act passed by the legislature conditioned to become a law only upon a popular vote was unconstitutional. It was said that the people had delegated to the legislature all powers of legislation, that they were entitled to have the legislature exercise its judgment and discretion, and that the legislature could not evade the responsibility of passing laws by providing that they must first be approved by the voters.

The principles of this decision have been somewhat questioned by judicial writers and our courts have held that the doctrine there laid down would not be extended beyond the facts of the case, and in that regard have held that the legislature might enact that a completed law should not take effect until approved by a popular vote. While this distinction may strike the ordinary mind as being somewhat fanciful, yet it is well settled in our courts and, with that limitation, the decision in *Barto* v. *Himrod* is now the acknowledged law of this

state. *Bank of Rome* v. *Village of Rome*, 18 N. Y. 44, 45; *Bank of Chenango* v. *Brown*, 26 id. 472, 473; *Starin* v. *Town of Genoa*, 23 id. 439, 447; *Village of Glovers-ville* v. *Howell*, 70 id. 287; *People* v. *Fire Assn.*, 92 id. 317; *People* v. *Long Island R. R. Co.*, 134 id. 508; *People ex rel. Unger* v. *Kennedy*, 207 id. 533.

The rule above laid exists, however, only when the statute is a completed law when it leaves the hands of the legislature. If the enactment itself is incomplete until further action is had the principles above stated have no application. *Barto* v. *Himrod*, 8 N. Y. 483, 490; *People ex rel. Unger* v. *Kennedy*, 207 id. 548.

The purpose of this statute was to furnish a complete plan of city government and the difficulty with the proposition thus advanced is that the legislature has not enacted in this case any completed law upon the subject. It has not defined what the ordinances shall be which are to displace the present city government and it leaves that matter to be determined solely by the city council to be selected under the act. It is the discretion of the city council, therefore, and not the action of the legislature which makes the statute complete.

In the next place the act is invalid in that it attempts to delegate to the municipality the power to regulate duties that are not purely municipal but involve the performance of state functions. It authorizes the abolition of the board of assessors, the board of public safety, the board of health and the board of charity, with the conferring of their duties upon another body which is authorized to regulate the performance of the same. By the city charter the assessors are declared to have all the powers and are required to perform all the duties conferred and imposed upon town assessors by the laws of the state, and, as such, they make the

assessments for the purpose of levying state and county taxes. In performing these duties they proceed according to the provisions of the General Tax Law which furnishes a uniform system of taxation throughout the state. Their duties are, therefore, of a statewide character as they in part relate to the general system of taxation for the purpose of defraying the expenses of government.

The board of safety has the management and control of the police department, which conserves the public peace, and it, therefore, performs functions not strictly municipal but in which the people at large have an interest, while the duties of the board of health and board of charity are by no means confined to matters in which the municipality only has an interest. The board of health has all the powers and is subject to all the duties conferred and imposed on local boards of health. It acts under the direction and authority of the state department of health which establishes a sanitary code and a system of rules and regulations which are binding on the local boards and supersedes all local regulations when inconsistent therewith. The board of charity also performs duties which in their operation and effect are not confined to merely local interests. The board is clothed with all the powers and charged with all the duties of overseers of the poor in towns and in that respect the city stands in the place of the town. *Nuns of St. Dominick* v. *Long Island City*, 48 Hun, 307.

The state has adopted a general system for the relief of the poor and has created a state board of charities which has supervision of the enforcement of the poor laws. The poor are divided into town, county and state charges, and any needy and deserving poor person, on applying to an overseer of the poor, is entitled to relief. If, however, he should prove to be

a state or county charge the town is indemnified for the amount expended by the state or county treasurer.

It is clear, therefore, that all of the above boards perform functions of a state character and the effect of the statute is to permit the city council to legislate for the state at large with regard to the performance of their duties. This, as we have seen, is beyond the domain of legislative power.

The act, in my judgment, is further invalid in that it attempts to delegate the power of repeal to the city council. While the statute uses the word " superseded," that term must be construed in the sense of repeal, as to suspend an act is to cease its operation, and this is no more or less than a qualified repeal. It is undoubtedly true that so far as local matters are concerned, which only affect the municipality, the legislature may provide that, upon the adoption of local ordinances, charter provisions upon the subject shall be deemed to be repealed. There have been several adjudications to that effect. *Matter of City of New York (Morris Theatrical License)*, 131 App. Div. 767; *City of New York* v. *Alhambra Theatre Co.*, 136 id. 509; affd., 202 N. Y. 528; *People* v. *Kaye,* 160 App. Div. 644.

This, however, is on the ground that the ordinances are entirely local and concern only the city itself.

So also the legislature may doubtless provide that, upon the existence of certain conditions, a statute shall be repealed and it may refer the matter to some board or tribunal to say whether or not those conditions exist. But in that event the legislature must itself prescribe the conditions and fix some standard by which the same can be ascertained. *Village of Saratoga Springs* v. *Saratoga Gas, E. L. & P. Co.*, 191 N. Y. 138–140, 146; *People* v. *Klinck Packing Co.*, 214 id. 139.

Manifestly the rule invoked cannot be extended to this case. The legislature has not prescribed the conditions upon which the old charter shall be repealed or provided any standard for that purpose. It leaves it to the city council to be chosen under the act to say what action shall be necessary to effect such repeal. The charter provisions thus referred to do not relate to matters strictly municipal, but affect the state at large, and to allow the municipality to thus determine would permit it to say when and under what conditions state laws and regulations should be superseded or repealed.

Furthermore, it seems to me that the statute is invalid for failure to comply with the provisions of section 1, article XII, of the State Constitution. It is there made the duty of the legislature to restrict the power of taxation in municipalities and, in compliance with this command, the legislature did provide in the charter now in force that the rate of municipal taxation should not exceed one dollar and seventy cents upon each one hundred dollars of the assessed valuation. By the act in question the legislature permits the city council to do away with the restriction and fails to provide any limitation in its place. A statute that so plainly violates the express command of the Constitution cannot, in my judgment, be held to be a valid legislative act.

Finally it is urged by the counsel for defendants that so far as local regulations are concerned the act does not violate the Constitution and that to the above extent its validity should be upheld. Granted that there are some features of the act which in and of themselves would not be inimical to the Constitution, it seems to me that the invalid provisions are so connected with the general purposes of the act and are so interwoven among its provisions that they destroy the

whole statute. To eliminate these provisions would be to divest the statute of its most essential features, and it cannot be seriously contended that, with these provisions out, the legislature would have enacted the statute. In such cases the whole statute must be condemned. *Duryee* v. *Mayor,* 96 N. Y. 477, 492; *Lawton* v. *Steele,* 119 id. 227, 241; *Rathbone* v. *Wirth,* 150 id. 459, 479; *People* v. *Klinck Packing Co.,* 214 id. 122, 140; *Field* v. *Clark,* 143 U. S. 696.

The plaintiffs' counsel have submitted as a part of their brief the opinion of the attorney-general in *Matter of City of Niagara Falls,* in which that official arrives at the conclusion that the act in question is invalid. While this opinion is by no means controlling, it is useful as giving the views of the chief law officer of the state whose functions are largely to advise the state departments as to the construction and effect of statutes. Further confirmation of the views above expressed is found in the debates of the last constitutional convention. The subject of home rule for cities was one of the most important topics considered by that convention. The debates upon that subject are most luminous and were participated in by some of the most prominent and distinguished lawyers in the country and by former judges of the Supreme Court of many years' experience and high standing upon the bench. Among the questions considered was the present statute and I gather from the report of this debate that all agreed that this statute and all legislation of a like character would under the present Constitution be invalid.

In arriving at the conclusions which I have reached I am not unmindful that statutes ought not to be lightly held invalid and that except in the clearest cases courts, as a general rule, are averse to so holding upon

the trial. I do not think, however, that this rule has any application to the present case. The action was brought to determine whether· the act in question was a valid law. Very important interests are involved and if the city officials were permitted to organize the city government under this act and it should afterwards be held invalid the most chaotic and indescribable confusion would result. The people are entitled to have the validity of the statute determined and under these circumstances the court ought not to decline, even if it could, to pass upon the same.

It follows that the plaintiffs are entitled to a decree adjudging the Optional City Government Law, so far as applicable to the city of Watertown, to be unconstitutional and void and perpetually enjoining and restraining the defendants from organizing the city government under the provisions of that act. As this was designed to be a test case to determine the validity of that law for the purposes above stated no costs should be allowed.

Findings in accordance with this opinion may be prepared and, if not assented to by counsel, the same may be settled before me on five days' notice.

Judgment accordingly.