PEOPLE OF THE STATE OF NEW YORK ex rel. ROBERT
S. FERGUSON, Plaintiff, *v.* DOW VROMAN and ABRA-
HAM WEIL, as Election Commissioners of the County
of Niagara, Defendants.

(Supreme Court, Erie Special Term, September, 1917.)

Constitutional law — mandamus — statutes — unconstitutionality of —
    Optional City Government Law — election of city officers.
Elections — of city officers in city of Niagara Falls — duties of board of
    election commissioners — Election Law.

Where the duty to perform an act depends solely on whether
a statute is unconstitutional and void, the question may be deter-
mined on a petition for a writ of mandamus.

The curative statute (Laws of 1916, chap. 530) by which the
legislature undertook to repeal chapter 300 of the Laws of 1904,
as amended (charter of the city of Niagara Falls prior to the
adoption of plan C of the Optional City Government Law,
enacted by Laws of 1914, chap. 444) and to grant a new charter
to said city and validate the election of the mayor and four
councilmen who had been selected pursuant to the Optional
City Government Law which had been declared unconstitu-
tional, is unconstitutional and void, and chapter 300 of the
Laws of 1904 is still the charter of said city, and under the
provisions thereof there are to be elected at the general elec-
tion to be held in said city on November 6, 1917, certain city
officers.

Candidates for the city offices provided for by chapter 300 of
the Laws of 1904, as amended, may now be nominated by inde-
pendent certificates pursuant to the provisions of the Election
Law on or before October 17, 1917, and the board of election
commissioners is required to do all acts necessary to have the
names of the candidates so nominated submitted to the electors
at the general election to be held.

APPLICATION for a peremptory writ of mandamus.

Frank S. Nicholson, for petitioner.

Supreme Court, September, 1917.        [Vol. 101.

S. Wallace Dempsey, for respondents Dow Vroman and Abraham Weil.

Robert J. Moore (corporation counsel), for city of Niagara Falls.

BISSELL, J. This is an application for a peremptory writ of mandamus to require the board of election commissioners of Niagara county to do all acts necessary to have submitted to the electors of the city of Niagara Falls at the general election appointed to be held on the 6th day of November, 1917, the names of certain candidates claimed to be the nominees of the Democratic party for the various offices provided under chapter 300 of the Laws of 1904 as amended. The real purpose of the application, as stated by the moving party, is to test the legality of the present scheme of government of the city of Niagara Falls; and involves the determination of the constitutionality of two acts of the legislature, chapter 444 of the Laws of 1914 and chapter 530 of the Laws of 1916. Chapter 444 of the Laws of 1914, known as the Optional City Government Law, has already been declared unconstitutional by this court in *Cleveland* v. *City of Watertown,* 99 Misc. Rep. 66, which was affirmed by the Appellate Division, Fourth Department, July 2, 1917. Plan C of this law was submitted to the voters of the city of Niagara Falls in 1914 and adopted. In 1915 city officers were chosen pursuant to plan C, and since January 1, 1916, these officers have been acting in the official capacities for which they were supposed to have been chosen.

The defendants have raised by preliminary objection the question whether a writ of mandamus may issue in a proceeding instituted to test a question of law, and claim that the petitioner does not show a clear and unquestioned right to the writ. They rest their argument upon the claim that the election of the city

officers under the unconstitutional act of 1914, pursuant to which a " commission " or " city manager " form of government was organized, was validated by a curative statute passed in 1916, and which undertook to repeal chapter 300 of the Laws of 1904 as amended (the charter of Niagara Falls prior to the adoption of plan C), to grant a new charter to the city of Niagara Falls, and validate the election of the mayor and four councilmen, who had been selected pursuant to the provisions of the unconstitutional law of 1914.

While Merrill on Mandamus, page 65, quoted by defendants' counsel, states that " a duty which involves a decision that a law is unconstitutional is not considered to be plain," basing the declaration of the principle upon *Lynch, Ex Parte,* 16 S. C. 32, and *State* v. *Hapgood,* 30 id. 519, it is found that in this jurisdiction, in cases where the duty to perform an act depends solely on the question whether a statute or ordinance is unconstitutional and void, the question may be determined on a petition for a mandamus. This was done in *People ex rel. Carter* v. *Rice,* 135 N. Y. 473, and also in *Sherrill* v. *O'Brien,* 188 id. 185; *Matter of Reynolds,* 202 id. 430, and *Matter of Trounstine* v. *Britt,* 212 id. 421.

I am of opinion therefore that the preliminary objection should be overruled, and the application of the petitioner granted, if it shall be determined that the act of 1916 is also unconstitutional.

On January 11, 1916, the attorney-general of the state of New York gave an opinion holding that certain parts of the Optional City Government Law as attempted to be applied in the city of Niagara Falls were unconstitutional. 6 State Dept. Rep. 452.

In the month of May, 1916, there was passed by the legislature an act to provide a new charter for the city of Niagara Falls (Laws of 1916, chap. 530), which is

the so-called curative act above referred to. This act provides (§ 6, subd. 3) that: "Until a mayor and councilmen shall be elected, as provided in subdivisions one and two, last above, the mayor and the four councilmen elected at the city election held in November, nineteen hundred and fifteen, shall be deemed respectively, the mayor and councilmen composing the council of the city of Niagara Falls during the terms for which they were respectively elected." And, further (§ 326): "The officers elected at the election held in November, nineteen hundred and fifteen, and all officers and appointees appointed by the city council, the mayor or city manager, on or since January first, nineteen hundred and sixteen, shall continue to be the officers and employees of said city for the terms for which they were elected or appointed respectively, but they shall perform the duties and be subject to the liabilities of said officers and employees as provided herein, the same as though said officers or members were elected or appointed, and had duly qualified under this act."

The petitioner contends that this so-called curative act failed to become a law because it was not presented to and approved by properly constituted officers of the city of Niagara Falls, as required by the Constitution, article 12, section 2, which provides that, after any bill for a special city law relating to a city has been passed by both branches of the legislature, it shall be transmitted to the mayor of the city, and within fifteen days thereafter returned to the house from which it was sent, stating whether the city has or has not accepted it. "In every city of the first class the mayor, and in every other city the mayor and the legislative body thereof concurrently, shall act for such city as to such bill." The defendants claim that this bill became a law by the action of the mayor and

the legislative body of the city chosen under the unconstitutional act of 1914 acting concurrently thereon as *de facto* officers of the municipality. In *Antwerp* v. *State of New York,* 218 N. Y. 422, 427, the court says, Chase, J., writing the opinion: "An unconstitutional act is not a law; confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

It is therefore clear that the men elected in 1915 under the unconstitutional law of the previous year were never legal officials of the city of Niagara Falls, and could not as such approve or accept for the city a law relating to it as required by the Constitution. The terms of office of the mayor and two of the councilmen, which the act of 1916 attempted to continue in office " for the terms for which they were elected," do not expire until January, 1920, they having been chosen for terms of four years; and the terms of two of such councilmen will expire January 1, 1918, they having been chosen for terms of two years.

The rule regarding *de facto* officers has been adopted merely with the idea of protecting the public; and *de facto* officers are not permitted to benefit personally from what is legally a usurpation of the office. If it can be held that the act of a person holding no office whatever (although assuming to exercise the duties of an assumed office which does not legally exist) may be considered the act of a *de facto* officer, in order that such person because of such act on his part may be thereby held to be and may become an officer *de jure,* then the act of the officials of the city of Niagara Falls chosen in 1915 in accepting the act to provide a charter for the city of Niagara Falls, passed in May, 1916, is a legal act. Unless this question can be answered in the affirmative, then the acceptance by these alleged

*de facto* officials of the charter of 1916, which attempted to re-create and re-confer upon them offices provided by an unconstitutional law, was a mere nullity, and no such *de jure* offices or officers exist to-day. The only legal offices and officers that exist are those provided by the charter of 1904 as amended.

The defendants' counsel contend that the acting officials of the city of Niagara Falls could legally approve chapter 530 of the Laws of 1916 as such *de facto* officers, citing *Sherrill* v. *O'Brien,* 188 N. Y. 185. There is a clear distinction between that case and the case at bar. In the *Sherrill* case the acts of the members of the legislature were held valid, and the members held to be *de facto* members, because the Constitution makes the legislature the exclusive judge of the election and the qualifications of its own members. But even if the acting officials of the city of Niagara Falls were *de facto* officers for some purposes, still there is no question in law but that their act in approving and accepting for the city chapter 530 of the Laws of 1916 was illegal and void as an act against public policy. In accepting that charter they as *de facto* public officials performed an act which accrued to their own personal benefit; that is, they undertook to approve and appoint themselves *de jure* officers of the city for long official terms. Laws of 1916, chap. 530, § 6, subd. 3; Id. § 326.

The charter of 1904 being still in existence on account of the unconstitutionality of the act of 1914, the officers last elected under the provisions of that charter were holding over in 1916, and the act of 1916 should have been submitted to them as the properly constituted officers then empowered to accept or reject the act as required by the Constitution. If the act had been rejected by them, and within fifteen days returned to the house from which it was sent, stating that it had

been rejected, or if they had failed to act upon and had not returned the act within fifteen days, it might nevertheless again have been passed by both branches of the legislature and have become a law if approved by the governor.

The act is also violative of section 2 of article 10 of the Constitution which provides: ''All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose,'' because the act attempts to appoint these officials chosen under an unconstitutional law as mayor and councilmen of the city of Niagara Falls without submitting them for election by the electors of the city.

I am therefore of opinion that the act passed by the legislature and accepted by these alleged *de facto* officials in 1916 is unconstitutional and void. It follows that the act of 1914 (chap. 444) having already been declared unconstitutional, chapter 300 of the Laws of 1904, as amended, is still the charter of the city of Niagara Falls, and under the provisions of that charter there are to be elected in the city of Niagara Falls at the general election to be held on November 6, 1917, a mayor and president of the common council, a city treasurer and overseer of the poor, and an alderman for each of the thirteen wards for the term of two years each, and three assessors, one for a term of three years, one for two years, and one for one year.

The petitioner claims that at the primary election held in the city of Niagara Falls on the 19th day of September, 1917, he was unable to express his desire as to the persons he wished nominated for offices under the charter of 1904 on any official ballot presented at

the primary, and that he consequently did so by means of an unofficial ballot, the result of which vote the board of election commissioners has refused to canvass, or to certify to the nomination of the men receiving the highest number of votes in the city for the above mentioned offices, or to place their names upon the ballot to be submitted to the electors at the general election to be held November 6, 1917, and for this reason he claims he was acting within section 81 of the Election Law.

As the returns made by the primary election officials of candidates under the 1916 charter were for offices which do not constitutionally exist, and as I am not satisfied that the use of the unofficial ballot pursuant to section 81 of the Election Law, as claimed by the petitioner, and voted by certain members of the Democratic party at the primaries held on September 19, 1917, complied with the requirements of the Primary Election Law, I do not require the board of election commissioners of Niagara county to do the acts necessary to have the names of any of the alleged nominees of the parties or persons participating in said primaries submitted to the electors. Candidates for the city offices provided for by chapter 300 of the Laws of 1904, as amended, may now be nominated by independent certificates pursuant to the provisions of the Election Law on or before the 17th day of October, 1917, and the board of election commissioners is required to do all acts necessary to have the names of the candidates thus nominated submitted to the electors of the city of Niagara Falls at the general election appointed to be held on the 6th day of November, 1917.

Ordered accordingly.