In the Matter of the Application of EDWARD J. MOONEY, Petitioner, for a Peremptory Mandamus Order against S. HOWARD COHEN, President, and Others, as and Constituting the Board of Elections in the City of New York, and THOMAS D. THACHER, Chairman, and Others, as and Constituting the New York City Charter Revision Commission, Respondents.*

Supreme Court, Special Term, Kings County, September 23, 1936.

* Revd., 272 N. Y. 33.

*Cullen & Dykman [Jackson A. Dykman* and *Maximilian Moss* of counsel], for the petitioner.

*Paul Windels, Corporation Counsel [William C. Chanler* and *Leonard M. Wallstein, Jr.,* of counsel], for the respondent Board of Elections in the City of New York.

*Joseph P. Chamberlain* and *Laurence Arnold Tanzer*, for the respondent New York City Charter Revision Commission.

*Albert DeRoode, amicus curiæ.*

*Emerich Kohn, amicus curiæ.*

DODD, J.  The petitioner, a citizen and elector, seeks a peremptory order of mandamus requiring the respondents, Board of Elections and New York City Charter Revision Commission, in the preparation of the ballots, voting machines and other paraphernalia to be used at the general election to be held on November 3, 1936, or any other general or special election, to disregard any proposition for the submission to the electorate of the proposed charter prepared by the New York City Charter Revision Commission, and to omit from the ballots, voting machines and other paraphernalia two

propositions embracing the adoption of the proposed charter and proportional representation in the election of councilmen.

The Legislature of this State, on an emergency message from the Governor, the concurrent action of two-thirds of the members of each House, and the approval of the Governor (State Const. art. 12, § 2), enacted chapter 867 of the Laws of 1934. This act " created a temporary commission, to be known as the New York City Charter Revision Commission," consisting " of nine members who shall be appointed by the mayor of the city of New York " to " make a study and analysis of the existing governmental structure of the city of New York   *   *   *   for the purpose of securing such factual data as will enable it to draft, and the commission is hereby directed to draft, a proposed new charter " which " shall set forth the structure of the city government and the manner in which it is to operate."   The commission is directed to file the proposed charter with the city clerk and provide for submission of it to the city electorate at a general or special election after December 31, 1934, and at least sixty days after the filing.   The act supplies the form of proposal and adds: " If such question shall receive the affirmative vote of a majority of the qualified electors   *   *   * then such proposed charter shall be the charter of the city of New York and shall become operative and effective at the time and in the manner prescribed therein."   It then continues that no provision for proportional representation in the election of officers, if embraced in the charter, shall be effective unless separately submitted to the electorate and adopted by majority vote.   The commission terminates on the election day the charter is submitted.   Certain administrative provisions, concerning hearings, power of subpœna, assistance from existing agencies, payment of actual expenses, and an appropriation, conclude the act, which became effective August 18, 1934.   Chapter 292 of the Laws of 1935 broadened the appropriation.   The mayor appointed the members of the commission and this body, after preliminary study, the filing of a draft of a proposed charter on April 27, 1936, the holding of public hearings and the revision of the draft, filed the proposed charter with the city clerk on August 17, 1936.   A resolution of the commission approving the charter, resolving its submission to the electorate on November 3, 1936, and formulating the two propositions to be voted upon, accompanied the proposed charter.   The board of elections having indicated that it is preparing to submit the two propositions at the coming election, the petitioner seeks the aid of this court to prevent the board of elections from doing what petitioner calls " an illega  act " on the ground that chapter 867 of the Laws of 1934 is unconstitutional.

Respondents raise the preliminary objection that mandamus is not the proper remedy, arguing that the purpose of mandamus is to compel administrative functioning fixed by law, to enforce ministerial action, not to halt or prevent it. This contention defines the remedy but superficially. Its integral objective is to enforce ministerial obedience to valid law enjoining specific duties. The board of elections is charged with the duty of acting according to law and must decide for itself the validity of the law precedent to compliance with it. An attempt to act under an invalid, void or unconstitutional act or statute is a failure to comply with the constitutional injunct to function legally. Mandamus will lie to compel action only when there is an avoidance of duty in the face of valid law It will not compel obedience to an unconstitutional act as such would enforce a breach of constitutional duty. If an act, pursuant to which the board of elections purports to function, is unconstitutional, mandamus will lie to compel the board to the positive performance of its duty, which would be inaction. (*Matter of Tierney* v. *Cohen*, 268 N. Y. 464; *Matter of McCabe* v. *Voorhis*, 243 id. 401; *Osborn* v. *Cohen*, N. Y. L. J. Aug. 13, 1936, p. 407; *People ex rel. Ferguson* v. *Vroman*, 101 Misc. 233, at p. 235; and *People ex rel. Conklin* v. *Boyle*, 98 id. 364.) In the last cited case Mr. Justice CROPSEY, after holding mandamus the proper remedy to prevent the board of elections from doing an illegal act and excluding as remedies prohibition and injunction, the latter of which is argued, at least inferentially, by respondents, says significantly (p. 368): " The only claim that could be urged that mandamus is not the proper remedy in this instance is that it in effect seeks to prevent the doing of an act, and not to compel its performance, but such relief by mandamus must be obtainable, at least in exceptional cases, where it is the only remedy available. The law is well settled that in special cases, where it is justified, a mandatory injunction may issue, although the usual office of that writ is to restrain and not to command direct action. [Cited cases omitted.] There is no more objection in reason nor upon principle to a negative mandamus than there is to a mandatory injunction."

I adopt this idea, which aptly fits the present application, for what is negative in form is positive in substance.

The practice having been approved, there remains but one question for the court and that is purely legal, a determination of the constitutionality of chapter 867 of the Laws of 1934. The value or shortcomings of New York city's present organic law, the necessity or expediency of a substitute, the inherent wisdom of the proposed new charter, the beneficent effects of its adoption, or the

political policy or economy that sponsored it, are matters of undoubted importance but wholly extraneous to this application. The assault on the enabling act is purely constitutional, a charge that the action of the Legislature constitutes an unconstitutional delegation of legislative power or, correlatively stated, an unlawful avoidance of legislative duty.

While the antecedent analysis of the provisions of the act indicates its purpose, clarity dictates the necessity of pointing out quite forcibly that the proposed charter is not an attempt by the city of New York to amend its charter pursuant to the provisions of the City Home Rule Law and accordingly there is not involved in this case any consideration of the Home Rule Amendment or the City Home Rule Law. Succinctly put, the sole question is whether the Legislature acted constitutionally in the act that it passed, that is whether it fulfilled the legislative obligation imposed by the Constitution or attempted to delegate it in part to a temporary commission for the purpose of drafting a proposed law and in part to the electorate, the people themselves, to enact the proposal into law.

While the question involved, paralleling in principle so many recently considered by the Supreme Court of the United States, finds solution in a simple fundamental concept, it emphasizes the necessity and wisdom of *fiat* observance of the Constitution of this State. That Constitution provides that the legislative power shall be vested in the Senate and Assembly. (Art. 3, § 1; *Barto* v. *Himrod*, 8 N. Y. 483.) This constitutes a solemn grant of power in the adoption of the organic law of the State by a people seeking a representative form of government. (*Stanton* v. *Board of Supervisors*, 191 N. Y. 428.) Those who constitute the Legislature by elective selection enjoy the privilege and assume the burden of that solemn surrender of what would be the present prerogative of the constituents of a pure democracy. Accordingly, any deprivation or curtailment of the power granted in the Constitution must find authority in that instrument, originally or through amendment, as must any right in those, intrusted with the power, to delegate it to others not embraced in the grant. None exists in law. The Legislature itself having no power to delegate its legislative duties to cities, it seems self-demonstrative that a constitutional change must precede any power of the Legislature to delegate a legislative duty to a non-constitutional agency, bureau or commission, and a legislative power to the people themselves. No court, by any process of implication, construction or judicial legislation that would amount to constitutional amendment, can place its seal of approval on any attempt at such delegation, and none has. Scru-

tiny reveals that cases approving legislative grants concern the delegation of administrative, ministerial, quasi-judicial and police powers, sanitary and health rules and regulations. None approves the delegation of a purely legislative power.

Examined in the light of these principles, chapter 867 of the Laws of 1934 is unconstitutional. A cursory perusal reveals that it does not contain or propose to embody a new charter for the city of New York, a completely formulated plan of city government. It shifts the duty of formulating the law to a temporary commission, a State agency, appointed by the mayor of the city of New York, and constitutes the electorate of that city, through referendum, the law-making authority. It does not purport to be, and is not, a referendum advisory to the Legislature. In a word, it is an avoidance of the ancient method that gave New York city its present charter; it is a recognition that the city itself has not sought a new charter, as it might by recourse to the City Home Rule Law; and it is an attempt to create a new method wholly unknown and unjustifiable constitutionally. This act differs from those sanctioned in law that leave to the electorate the determination whether a law shall become operative, since in those there has been a complete observance of the legislative duty to legislate and effectiveness alone is suspended pending an advisory referendum. (*People ex rel. Unger* v. *Kennedy*, 207 N. Y. 533.)

The respondents have advanced many collateral arguments in favor of upholding the law. None is germane, but one warrants comment. It is urged, seriously and strenuously, that even though chapter 867 is unconstitutional, the Legislature at its next session, which will antedate the effective date contained in the proposed charter, may adopt the charter as a law, thus curing any defect, and that to prevent the submission of the question of adoption to the electorate at the coming election would be a gross waste of the large appropriation to the commission and the efforts of its members. Suffice to say that sympathy for the expense, which may indeed not have been in vain, and wholehearted appreciation of the meritorious efforts of illustrious citizens, cannot supply constitutionality to an invalid law.

The motion is granted. Settle order on notice.