WILLIAM SPAULDING & others *vs.* INHABITANTS OF
PEABODY.

Essex.   November 7, 1890. — January 12, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & KNOWLTON, JJ.

*Municipal Corporation — Street Lighting — Electric Light Plant.*

Cities and towns have no authority under existing statutes to erect and maintain
works for the manufacture and distribution of electric light for lighting the
public streets, or for this and the additional purpose of furnishing light to their
inhabitants.

PETITION IN EQUITY, under the Pub. Sts. c. 27, § 129, filed,
August 21, 1890, by more than ten taxable inhabitants of the
town of Beverly, to prevent that town from raising money for
the construction of an electric lighting plant. The case was
heard by *Holmes*, J., who reserved it for the consideration of
the full court, and was as follows.

The respondent town on August 8, 1890, in accordance with the
report of a committee previously appointed, passed the following
votes : " That the town establish an electric light plant, and adopt
the Sperry arc system of the United Edison Manufacturing Com-
pany," on a lot of land owned by the town ; " That the town ap-
propriate $30,000 to build and equip an electric plant of not less
than 150 twelve hundred candle power (nominal) double arc
light capacity, and not less than one hundred such lamps be
placed in position on the public streets, and that the town sell
for commercial purposes any surplus lighting power it may have,
and that the sum of $2,500 be appropriated for running expenses
of this plant until the next annual town meeting; and " That a
committee of five be appointed with full power to carry out the
recommendations, and that the town authorize them to set poles,
and string wires in the streets, and do all other acts necessary
in the premises." The town treasurer was also authorized, with
the approval of the selectmen, to hire the $30,000 in a manner
provided for. The committee contemplated by the above vote
was appointed at the same meeting, and on August 19, 1890, en-

tered into a contract on behalf of the town for the construction and establishment of the plant in question.

*W. D. Northend & R. M. Morse, Jr.,* for the petitioners.

*L. S. Dabney,* for the respondent.

FIELD, C. J.   We assume, for the reasons stated in the opinion given by the Justices of this Court to the House of Representatives on May 27, 1890, ( *Opinion of Justices,* 150 Mass. 592,) that the Legislature by statute can confer upon towns authority to construct and maintain works for the manufacture and distribution of electricity, to be used by the towns and their inhabitants for illuminating purposes.   The question now presented is, whether the existing statutes confer any such authority, either for the purpose of lighting the streets of towns, or for this and the additional purpose of furnishing light to their inhabitants at reasonable rates.   Such authority is not within any of the customary powers which towns from very early times have exercised, and must be derived, if it exists, from the statutes relating to towns.

By the Prov. St. of 1692–93, c. 28, 1 Prov. Laws, (State ed.) 64, entitled " An act for regulating of townships, choice of town officers, and setting forth their power," it was provided in § 6, that the inhabitants might be assessed " for the maintenance and support of the ministry, schools, the poor, and for the defraying of other necessary charges arising within the said town."   By the Prov. St. of 1693–94, c. 6, § 1, 1 Prov. Laws, (State ed.) 136, it was provided that the surveyors of highways, to be annually chosen in each town, shall take care that " all highways, private ways, causeways, and bridges, lying within the precincts of such town, be kept in repair, and amended from time to time, when and so often as shall be needful, at the charge of such town, where it is not otherwise settled, that so they may be safe and convenient for travellers, teams, and drovers," etc.   These are the purposes for which the inhabitants of towns were authorized to grant and vote money by the St. of 1785, c. 75, § 7, and by the St of 1786, c. 81, § 1.   Powers from time to time have been given by statutes to towns to grant money for other purposes, many of which appear now in the Pub. Sts. c. 27, §§ 10–51.   The provision that a town may grant and vote money " for all other necessary charges arising in such town," is still retained in the statutes; Pub. Sts.

c. 27, § 10; but it is plain, from an examination of the course of legislation, that this phrase has been considered as of very limited scope, and that the Legislature has generally thought it necessary specifically to confer the authority if the inhabitants of towns were to have the power to grant money for purposes not recognized as a municipal duty by the early usages of towns. For statutes subsequent to the Public Statutes, conferring powers on towns involving the expenditure of money, see St. 1882, cc. 154, 255; St. 1884, c. 42; St. 1885, cc. 60, 123; St. 1886, c. 76; St. 1887, c. 345; St. 1889, cc. 21, 377, 380; St. 1890, cc. 119, 124. See also Pub. Sts. c. 34, § 1; c. 35, § 28; c. 44, §§ 8, 9; c. 50, § 7; c. 80, §§ 62, 70.

The first statute of which we are aware, authorizing a town to light its streets, was a special statute relating to the town of Boston. Prov. St. 1773–74, c. 12, 5 Prov. Laws, (State ed.) 301. This statute, among other things, recited in § 1 that " many of the inhabitants of the said town of Boston have, by a generous subscription, raised a sum of money sufficient for purchasing such a number of lamps as will be necessary for illuminating the streets, etc., in that metropolis," etc.; and it authorized the selectmen to set up lamps in the streets, and to contract for the lighting of the same; and, after reciting in § 5 that the inhabitants of the town had voted, at a meeting on the eleventh day of May last, " that a sufficient number of lamps should be set up and fixed, in said town, for enlightning the same in manner as aforesaid," provided in § 6 that the inhabitants might at a legal town meeting " make such provision for the supporting and maintaining said lamps and lights, and other necessary charges attending the same, as they shall judge best, by raising such a sum of money, yearly, by a tax laid on the inhabitants, as may by them be thought necessary for that purpose." The statute also imposed forfeitures for breaking, throwing down, or extinguishing the lamps, or injuring the lamp-posts. This was a temporary statute, and was made perpetual by the St. of 1796, c. 69. *Tyler* v. *Sturdy,* 108 Mass. 196, 200. It was repealed by the St. of 1825, c. 3, § 1, which authorized the mayor and aldermen of the city of Boston to set up lamps in the streets and other places in the city, and " to make all necessary contracts, rules, orders, and regulations respecting the said lamps, and the lighting and

keeping the same in repair, and the regulation and preservation of the same, as they may deem most for the benefit of said city." If any inference is to be drawn from the passage of these special statutes, it is that it was not considered that a town had authority to maintain street lamps under the general statutes then in force.

It has also been uniformly held that cities and towns are under no obligation to light their streets for the purpose of making them safe and convenient for travellers. *Sparhawk* v. *Salem,* 1 Allen, 30. *Tyson* v. *Booth,* 100 Mass. 258. *Randall* v. *Eastern Railroad,* 106 Mass. 276.

The first general statute which in terms relates to the maintenance of street lamps in a town was the St. of 1870, c. 332, now re-enacted in the Pub. Sts. c. 27, § 37. Section 1 was as follows : " Any town, at a legal meeting, having an article in the warrant for the purpose, may authorize a village or district in such town, containing not less than one thousand inhabitants, the limits of which shall be accurately defined, to organize under such name as may be authorized by such town, for the purpose of erecting and maintaining street lamps, establishing and maintaining libraries, building and maintaining sidewalks, and employing and paying watchmen and police officers, or any of such purposes " ; and by subsequent sections provision was made for calling meetings, electing officers, and raising money for these purposes. Under this statute, a town might perhaps make the limits of the district the same as those of the town, if it contained not less than one thousand inhabitants. The statute was mainly intended for towns, a part of whose territory was so thickly settled that the powers named in the statute might properly be exercised within a defined district or part of the town, and the taxes therefore be imposed upon " the property, real and personal, within the district " ; Pub. Sts. c. 27, §§ 37, 38 ; c. 35, § 54 ; but the inference is strong that the Legislature intended that towns containing not less than one thousand inhabitants might erect and maintain street lamps without constituting themselves districts under the statute.

The St. of 1869, c. 457, § 1, provided that " cities and towns may construct for their own use lines of electric telegraph upon and along the highways and public roads within their respective

limits, subject to the provisions of chapter sixty-four of the General Statutes, as far as the same are applicable." This now appears in the Pub. Sts. c. 27, § 44. The St. of 1883, c. 221, provides: " All provisions of law granting to persons and corporations authority to erect, lay, and maintain, and to cities and towns authority to regulate, telegraph and telephone lines, except sections sixteen and eighteen of chapter one hundred and nine of the Public Statutes, shall, so far as applicable, apply to lines for the transmission of electricity for the purpose of lighting." In the statutes towns and cities are not usually referred to as persons or corporations, and the express mention of cities and towns in this statute, and the distinction between the authority granted to them, which is " to regulate telegraph and telephone lines," and that granted to persons and corporations, which is " to erect, lay, and maintain " such lines, shows that cities and towns were not meant to be included in the words " persons and corporations." See St. 1889, c. 434. The St. of 1885, c. 314, provides for the appointment of a board of gas commissioners. See Pub. Sts. c. 61. By the St. of 1887, c. 382, § 1, this board was given " general supervision of all companies engaged in the manufacture and sale of electric light," etc.; and by the St. of 1889, c. 373, the name of the board was changed to that of gas and electric light commissioners. The St. of 1888, c. 350, § 1, provides: " Any gas company in this Commonwealth, whether furnishing gas under the provisions of general laws or of any special charter or of any contract with any city or town, may apply to the board of gas commissioners to fix and determine the price of the gas to be thereafter sold and delivered by said company, or to revise any former order or action of said board in regard to the quality and price thereof," etc. This implies that gas companies may sell gas to cities and towns, and it is also perhaps implied in the St. of 1885, c. 314, § 9, which is made applicable to electric light companies by the St. of 1887, c. 382, § 2. An inference may perhaps be drawn from these statutes that cities and towns are authorized to buy gas and electric light from gas and electric light companies, but this is the extent of the inference which can be drawn from these statutes. The Pub. Sts. c. 203, § 76, provide, among other things, for the punishment of any person who wilfully and maliciously " ex-

tinguishes a lamp, or breaks, destroys, or removes a lamp, lamp-post, . . . erected on a bridge, sidewalk, street, highway, court, or passage." This provision was derived from the St. of 1823, c. 113; and it implies that lamps and lamp-posts in the places mentioned are or may be lawful erections. Without considering the special charters of cities, it may be assumed that the inference to be drawn from the general statutes we have cited is, that towns, particularly those containing one thousand inhabitants or more, may erect and maintain street lamps, and may buy gas and electricity, as well as oil and other substances, to be used for furnishing the light. See *Sullivan* v. *Holyoke*, 135 Mass. 273.

The argument is, that if such a town as Peabody can erect and maintain street lamps, it can maintain them by any appropriate means, and that one appropriate means is the construction and maintenance of works for the manufacture and distribution of the gas or electricity which it uses for the purpose of lighting its streets. The extent to which powers will be implied from general words depends a good deal upon the nature of the written instrument the meaning of which is to be determined. In interpreting a constitution of government, the necessities of the government established by the constitution must be considered, and when it appears that there is no attempt specifically to define in the constitution all the powers granted, but that the great objects of the government are described only in general terms, a somewhat liberal construction may be necessary in order that the government may not fail of accomplishing the ends for which it was created. Towns are subordinate divisions of the State, and they vary greatly in the number of their inhabitants and in the amount of their taxable property. It is wholly for the Legislature to determine, within the limitations of the Constitution, the powers which towns shall possess; and when it appears that the custom of the Legislature has been specifically to define from time to time the purposes for which towns may raise money by the taxation of their inhabitants, and when the Legislature can at any time grant additional powers if they are deemed necessary, a somewhat strict construction of existing statutes is reasonable, and in accordance with the presumed intention of the Legislature. Under the special acts whereby Boston was authorized to maintain street lamps, it could not

have been held that the town or city was authorized to engage
in the whale fisheries for the purpose of procuring oil.   The
intention was that the oil for the lamps should be bought as
persons generally bought oil used for lights.   Towns are author-
ized to raise money for the support and employment of the poor,
but it could not reasonably be held that it was intended that
towns should at public expense erect and maintain factories for
the manufacture of all the clothing which the poor might wear,
or of all the implements which they might use.   Towns are au-
thorized to raise money for carrying pupils to and from the public
schools, but this could not be held to authorize towns to maintain
a street railway or a steam railroad.   Towns are authorized to
maintain public libraries, but this does not mean that they can
maintain paper-mills and printing establishments for making
books for the libraries.   These are undoubtedly extreme exam-
ples, but they illustrate the necessity of a somewhat strict con-
struction of the statutes relating to the powers of towns.

The decisions of this court show that the statutes concerning
the powers of towns have been construed strictly when the pow-
ers are such as to require the raising and spending of consider-
able sums of money.   In *Minot* v. *West Roxbury*, 112 Mass. 1,
it is said:   " It is well settled by our decisions, that towns
derive all their authority to tax their inhabitants from the
statutes; if the authority to tax for a particular purpose is not
found there, either in express terms or by necessary implication,
it does not exist."   In *Coolidge* v. *Brookline*, 114 Mass. 592, it
is said:   " Such power to tax must in all cases spring from the
statutes, and must be found there in terms, or be necessarily in-
ferred from some corporate duty imposed or some corporate
right given.   The only exception to this rule is confined to a
few cases of usage relating to the comfort and convenience of the
inhabitants of a town, such as town clocks, hay-scales, pumps,
reservoirs, etc., and is not to be extended.   Towns have been
kept rigidly within this rule by the Legislature and the courts."
See St. 1889, c. 380 , *Connolly* v. *Beverly*, 151 Mass. 437.   In
*Anthony* v. *Adams*, 1 Met. 284, it is said : " A town might be so
situated near the outlet of a lake or pond, where a road would be
liable to be flooded and damaged by freshets, and where a very
heavy expense would be required for the necessary bridges and

embankments, but by cutting a canal and making a new outlet at the opposite side of the lake, at some distance, this expense might be saved. This would hardly be sufficient to raise a constructive power in the town to undertake such distant canal, or to confer an authority on county commissioners to require it. It would lead to a latitude of construction, in regard to corporate power and duties, which would be in a high degree dangerous."

An examination of the statutes shows that the Legislature has many times conferred upon towns, by subsequent statutes, powers which had been denied them by the courts under the statutes existing at the time of the decisions, but often with very important limitations upon the amount of money to be expended, or the manner in which the powers should be exercised. Sometimes the Legislature has conferred powers upon certain towns and cities, by special acts, but has not passed a general law on the subject, perhaps because it was thought that some towns were too small and too poor to bear the necessary expense. The St. of 1870, c. 93, which authorizes cities and towns to purchase the water rights and franchises of aqueduct companies, or of municipal or other corporations, has placed special restrictions upon the exercise of this authority, and a limitation upon the amount of bonds which may be issued in payment. See St. 1873, c. 255 ; Pub. Sts. c. 27, §§ 27–31, c. 29.

It cannot be said that the erection of such works as are contemplated by the votes shown in this case are in any strict sense necessary in order to enable the town of Peabody to light its streets. When street lamps were first authorized in Boston, the use of gas or electricity for furnishing light was unknown. Oil, or some similar substance, was used for that purpose then, as it is now used in many places. Gas has now been used for a long time in thickly settled communities, and has been bought for that purpose, yet there is nothing in the statutes indicating that towns may construct and maintain gas works for the purpose of lighting their streets, except the general words that they may erect and maintain street lamps, and the construction put upon the statutes in practice has been that towns, under the authority conferred by the general laws, have not themselves undertaken to construct and maintain gas works for lighting the streets. In small towns, the erection and maintenance of such works under

a general implied power might involve an expenditure of money which could not well be borne. The subject of constructing and maintaining gas or electric works for the manufacture of gas or electricity, and the distribution thereof through the streets of towns and cities for the purpose of furnishing light, is one of too much importance to be attached as a mere incident to the power given to erect and maintain street lamps, and we think that, if the Legislature had intended that towns generally should have authority to erect and maintain such works, the authority would have been plainly expressed in the statutes, with such limitations and accompanied by such restrictions as the Legislature might think it prudent to establish. We see no indications in the existing statutes that the Legislature intended to make provision for the exercise of any such authority by the towns of the Commonwealth.*

If we assume that the only action now contemplated by the town of Peabody is the erection and maintenance of electric works for the purpose of lighting its streets, in the manner shown by the evidence, still we are of opinion that the votes are beyond "the legal right and power" of the town. Pub. Sts. c. 27, § 129.                                    *Decree for petitioners.*

---

* See St. 1891, c. 370, approved June 4, 1891, entitled " An act to enable cities and towns to manufacture and distribute gas and electricity."