JOHN AHERN ET AL., APPELLANTS, V. RICHARDSON COUNTY ET AL., APPELLEES.

FILED SEPTEMBER 29, 1934.   No. 29386.

*Bayard T. Clark*, for appellants.

*J. H. Falloon, John C. Mullen* and *F. A. Hebenstreit*, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and YEAGER, District Judge.

EBERLY, J.

This is a suit in equity brought by John Ahern and

Roselle Ahern, as taxpayers of Richardson county, against Richardson county and certain county commissioners thereof, seeking an injunction to enjoin defendants from constructing a certain bridge over the Missouri river at or near Rulo, Nebraska. Issues were joined, trial had to the court, and evidence was introduced. At the conclusion of the hearing a decree was entered on August 31, 1934, for defendants. This decree included specific findings, which may be summarized as follows: That the county of Richardson is the owner of a franchise which was conferred by an act of congress on John C. Mullen and others, which had been duly assigned to the county of Richardson on February 14, 1934; that within one year from the passage of the act granting the franchise, John C. Mullen and others, as grantees of such franchise, had commenced the actual construction of the bridge and approaches; that Richardson county, as holder of the franchise, has the right thereunder to construct a bridge across the Missouri river at or near Rulo, Nebraska, between Richardson county, Nebraska, and Holt county, Missouri; that for the purpose of securing funds with which to construct this bridge such county has the right to make application to the reconstruction finance corporation of the United States, and, in the event such loan is made, to issue therefor "revenue bonds" payable only from the tolls of such bridge when completed, and which bonds would not be an obligation on the taxable property of Richardson county; and that such county has a right to secure the payment of said revenue bonds by executing a mortgage to the reconstruction finance corporation on said bridge.

The proposed proceedings of the corporate authorities of Richardson county were approved by the district court, and the injunction denied. Plaintiffs appeal, and the cause comes before this tribunal for trial *de novo*.

It is quite obvious that the legal effect of the act of congress of March 4, 1933, was to vest in the grantees thereof a franchise; that is, a special privilege conferred

by the government upon individuals which does not belong to the citizens generally, of common right. 26 C. J. 1008. This franchise constituted property. *Monongahela Navigation Co. v. United States,* 148 U. S. 312; *Gulf and Ship Island R. Co. v. Hewes,* 183 U. S. 66; *Wilmington Railroad v. Reid,* 13 Wall. (U. S.) 264.

It will be noted that the grantees of this act of congress, as expressly set forth therein, are John C. Mullen, John H. Hutchings and William Shepherd, their heirs, representatives and assigns.

A grant to a grantee or assigns has been held sufficient to authorize an assignment without further consent of the sovereign executing such grant. *Ft. Smith Light & Traction Co. v. Kelley,* 94 Ark. 461; *Commercial Electric Light & Power Co. v. Tacoma,* 17 Wash. 661; *City of Wheeling v. Chesapeake & Potomac Telephone Co.,* 82 W. Va. 208. See, also, 26 C. J. 1038.

And it is also true that, in the absence of restrictions contained within the statute of its creation, a right to sell a franchise has been held to include the right to mortgage it. *Willamette Mfg. Co. v. Bank of British Columbia,* 119 U. S. 191.

We are therefore quite of the opinion that the proceedings disclosed by the evidence were sufficient to transfer to Richardson county all rights originally vested in John C. Mullen and others in the franchise, as well as to the results of the work performed thereunder.

However, the rule also obtains that, in the absence of provisions to the contrary, franchises are granted subject to existing laws. *Chesapeake & Ohio R. Co. v. Miller,* 114 U. S. 176.

The terms of the franchise act do not purport to confer any additional powers upon the grantees therein named or upon their assigns. Therefore, the question presented by this record must be determined in the light of the powers vested in the county of Richardson under the laws of the state of Nebraska, and whatever limitations are

therein expressed, or necessarily implied, must be complied with.

It is obvious that in Nebraska counties are not municipal corporations. *State v. Cheyenne County, ante,* p. 619.

Also, we are committed to the view that, "Counties and county boards can only exercise such powers as are expressly granted by statute, and such grant of power must be strictly construed." *State v. Lincoln County,* 18 Neb. 283. See, also, *Brooks v. MacLean,* 95 Neb. 16.

In line with this general principle, "The rule is well settled that, in the absence of statutory authority therefor, express or implied, the fiscal agents of a county cannot issue commercial paper so as to charge the county, and where such authority is given to fiscal agents it must be pursued strictly or the county cannot be held for the payment thereof. 15 C. J. 611. See, also, *Stewart v. Otoe County,* 2 Neb. 177.

It is also well established that, "In the absence of authority conferred expressly or by necessary implication by Constitution or by statute, counties or parishes have no power to issue bonds." 15 C. J. 611.

As disclosed by the record before us, there is no contention that Richardson county possesses the necessary funds to defray the cost of this proposed improvement, either in the form of cash in its treasury or in appropriate levies of taxes. The necessary funds are to be raised wholly by sale of the revenue bonds plus the moneys donated by the federal government.

The county board has a general supervision over the public roads, with power to establish and maintain them as provided by the statutes. Comp. St. 1929, sec. 39-301.

In 1895 there was enacted by the legislature chapter 45 of the session laws of that year, which now appears as sections 39-834 to 39-838, Comp. St. 1929, authorizing any county to issue bonds to construct or aid in the construction of a highway wagon bridge across any boundary stream of the state of Nebraska. However, the right of a county board to issue such bonds is, by the terms of the

enactment, made dependent on the three-fifths affirmative vote of the electors at a general or special election held for the purpose of authorizing the same.

In 1927 there was enacted chapter 184 of the session laws of that year, entitled "An act providing for the construction of interstate bridges; * * * enabling any county * * * to aid in the construction of such bridges," etc. It now appears as sections 39-1601 to 39-1609, Comp. St. 1929. It provides, in part: "Any county * * * shall have the authority to aid the state in the construction or purchase of any interstate bridge. Whenever the governing authority of any such county * * * by resolution shall determine to exercise such authority, then the governing authority of any such county * * * shall be authorized to enter into an agreement with the department of public works to aid the state in the construction of any such bridge, and for such purpose such county * * * shall have authority to issue and sell bonds: Provided, the governing authority of such county * * * shall first submit to the electors thereof the question of the issuance of such bonds." Comp. St. 1929, sec. 39-1609.

Also, section 11-401, Comp. St. 1929, provides: "Any county * * * is hereby authorized to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county board of such county * * *, not exceeding ten *per centum* of the assessed valuation of all taxable property in said county * * *: Provided, the county board * * * shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county * * * in the manner provided by law, for submitting to the people of a county the question of borrowing money."

In the instant transaction none of these statutory provisions have been followed or in any manner complied with by the corporate authorities of Richardson county.

It thus appears that one of the uniform requirements of our statutes pertaining to this subject is that public property shall not be encumbered, nor shall the taxpayer

be adversely affected by the issuance of the obligations of the county in the form of bonds or commercial obligations, without prior affirmative approval expressed at an election duly held. This bridge franchise, and the property created by the county's grantor which is essential to the exercise thereof, are public property now owned by the county. The electors of Richardson county have in no manner approved the issuance of the proposed revenue bonds, nor have they consented to the charging of any of the property owned by the county for the payment thereof. It is admitted that there is no express authority for the proposed proceedings, and certainly such authority cannot be implied.

We are committed to the following principles as announced by this court in *Hamlin v. Meadville,* 6 Neb. 227:

"County commissioners possess no powers except such as are expressly granted, or are incidentally necessary to carry such powers into effect.

"Counties have no authority at common law to issue bonds. They are quasi corporations, mere governing agencies, charged with certain objects of necessary local administration.

"The power to issue commercial paper must be conferred by statute. And such power must be exercised in the manner prescribed."

See, also, *Walsh v. Rogers,* 15 Neb. 309; *Oakley v. Valley County,* 40 Neb. 900; *State v. Babcock,* 21 Neb. 187; *State v. Lincoln County,* 18 Neb. 283.

It follows that the proposed proceedings of the board of county commissioners of Richardson county in the construction of the proposed interstate bridge, including the issuance of revenue bonds, are not in conformity with law, and, under the circumstances involved, are wholly unauthorized; and that plaintiffs are entitled to the injunction sought. Thus, we conclude that the district court erred in its denial of the injunction, and the judgment is therefore reversed and the cause remanded, with directions to enter decree as prayed in plaintiffs' petition.

REVERSED.