In the Matter of EDWARD J. TIERNEY, Respondent, against S. HOWARD COHEN et al., Constituting the Board of Elections of the City of New York, Appellants.

(Argued October 16, 1935; decided October 22, 1935.)

Paul Windels, Corporation Counsel (Joseph L. Weiner and Henry R. Bright of counsel), for appellants. The applications for mandamus are premature and the issues sought to be raised are not properly before the court at this time. (Matter of McCabe v. Voorhis, 243 N. Y. 401; People ex rel. Hotchkiss v. Smith, 206 N. Y. 231. The scheme of financing set forth in the local law is valid. (Robertson v. Zimmerman, 268. N. Y. 52; New York Steam Corp. v. City of New York, 268 N. Y. 137; Kelly v. Merry, 262 N. Y. 151.)

Ralph G. Albrecht, Martin A. Meyer, Jr., Jesse S. Raphael and Louis S. Lewis for Consumers' Public Power Plant Committee, amicus curiæ. Chapter 281 of the Laws of 1934, on the authority of which Local Law No. 25 was passed, is a clear declaration of legislative public policy in favor of public ownership and operation of public utility service and it permits municipalities to adopt the means best suited to their individual circumstances to accomplish this result and should, therefore, be liberally construed. (Finsilver, Still & Moss, Inc., v. Goldberg, Maas & Co., 253 N. Y. 382.)

Joseph M. Proskauer, Randall J. Le Boeuf, Jr., Horace R. Lamb and J. Alvin Van Bergh for respondent. Mandamus will issue to prevent a referendum where

either the proposition directed to be submitted, or the local law directing submission, is invalid. (*Matter of McCabe* v. *Voorhis*, 243 N. Y. 401; *Mills* v. *Sweeney*, 219 N. Y. 213; *Williams* v. *Boynton*, 147 N. Y. 426; *Schieffelin* v. *Hylan*, 236 N. Y. 254; *Matter of Village of Le Roy*, 35 App. Div. 177; *Hathaway* v. *City of Oneonta*, 148 Misc. Rep. 695; *Schieffelin* v. *Komfort*, 212 N. Y. 520; *Reycroft* v. *City of Binghamton*, 138 Misc. Rep. 257.) The attempt to finance the cost of a " public utility service " by the issuance of bonds, to which the city's credit is not pledged, being unauthorized by the State Legislature, is void. (*Robia Holding Corp.* v. *Walker*, 257 N. Y. 431; *Browne* v. *City of New York*, 241 N. Y. 96.) The local law is invalid in that, contrary to the enabling act, it purports to authorize an " authority " to finance a public utility service. (*Clark* v. *LaGuardia*, 245 App. Div. 325; *Browne* v. *City of New York*, 241 N. Y. 96.)

HUBBS, J. The Board of Elections has appealed from an order of the Supreme Court which prohibits and restrains it from submitting to the electors of the city of New York the proposition contained in Local Law 25. That local law is alleged to have been adopted pursuant to the provisions of chapter 281 of the Laws of 1934, article 14-A of the General Municipal Law (Cons. Laws, ch. 24), which authorizes the adoption of a local law by a municipality under which it may engage in operating electric lighting plants and public utility services. The enabling statute (Ch. 281) by mandatory provision requires a referendum before such a local law can become final and effective. The Municipal Assembly by such local law provided for a referendum and directed that the proposition be submitted to the electors of the city at the election to be held on November 5, 1935.

The Special Term decided that Local Law 25 is void and restrained the Board of Elections from submitting

the proposition to the electors. The primary question involved on this appeal is whether that local law is void. If it is, then the other questions argued are of secondary importance.

The State Legislature by enacting chapter 281, Laws of 1934, authorized and empowered municipal corporations to establish an electric lighting plant and public utility services. It attempted to enact a law which, when followed and carried out by a municipality, would constitute a workable system by which to acquire an electric lighting plant and public utility services and to pay therefor. That statute became a part of the General Municipal Law of the State, article 14-A.

Section 360 thereof provides:

" Notwithstanding any general or special law, any municipal corporation may construct * * * any public utility service." (Subd. 2.)

" The proposed method of constructing, leasing, purchasing, acquiring, the plant and facilities for such service, together with both the maximum and the estimated costs thereof, the plan for financing such project, and the method of furnishing such service shall be fixed by a local law in the case of a city." (Subd. 3.)

" Authority to enact such a local law for a city is hereby conferred upon the local legislative body of the city as defined in the city home rule law." (Subd. 4.)

" Any such action by the local legislative body of a city, before taking effect, shall be submitted for the approval of the electors of the city at the next general election or at a special election called for such purpose, in the manner provided by, and in accordance with the provisions of the city home rule law relative to the submission of other local laws required thereby to be submitted in a mandatory referendum. * * * Every such local law, * * * and notice of the submission thereof, shall be published in one or more newspapers published within the city, * * *." (Subd. 5.)

Subdivision 6 provides that a municipal corporation may acquire a public utility company by purchase. Subdivision 7 relates to the rates to be charged and the method of operation. Section 361 relates to services beyond the territorial limits of the municipality and has no bearing on the questions here involved. Sections 362 and 363 read:

"§ 362. Financing by bonds. Any municipal corporation may finance the cost of such public utility service in whole or in part by levying taxes or by the issuance of bonds in the same manner as taxes are levied or bonds are issued pursuant to law for any permanent improvement by such municipal corporation; except that the amounts and terms of such bonds and the details of the proposed method of financing the cost of such service in the first instance shall be clearly included within the proposition submitted to the qualified voters of the municipal corporation in the mandatory referendum specified in this article. Any subsequent issue of bonds other than refunding bonds shall be subject to similar mandatory referendum.

" § 363. Construction of public utility service. The purchase, acquisition, leasing, and construction of such public utility service shall, in so far as is practicable, be effected by such municipal corporation in the same manner and by the same officers or boards as other authorized public improvements are effected for and by such corporation. The provisions of law in force in such municipal corporation applicable to the purchase, acquisition, leasing and construction of the public utility service provided for in this article shall apply when not inconsistent with the provisions of this article. The local law, ordinance or resolution provided for in section three hundred and sixty of this article may, however, provide a different method or authority or agency for the purchase, acquisition, leasing and construction of such service, not inconsistent with state law applicable thereto.

Funds to be used for any of the purposes set forth in section three hundred and sixty of this article shall be paid out in the manner prescribed by law for the payment of the expenses of other public improvements authorized for and effected by the municipal corporation affected."

By this statute the Legislature has provided for and granted to cities power and authority to establish electric lighting plants. That statute has become part of the General Municipal Law of the State and constitutes an addition to such General Municipal Law.

It would seem that a mere reading of the statute would convey to the mind of a reader the purpose which it was enacted to accomplish, the machinery to be employed, and the method of financing such a project. The purpose (in this case) is the construction of an electric lighting plant. The method is by the passage of a local law under the provisions of the City Home Rule Law (Cons. Laws, ch. 76) and the submission of the proposition to the electors of the city, the financing to be done by the city either by taxation, the issuing of bonds or partly by the issuing of bonds and partly by taxation.

The attempt to read into the statute another and different meaning runs counter to the clear wording of the statute and is in direct conflict with fundamental provisions of the General City Law (Cons. Laws, ch. 21) which remain in full force and effect and are so recognized in the enabling statute by its terms. It is urged by appellants, however, that the act authorizes the city by a local law to set up a statutory " authority " with the power to construct an electric lighting plant and finance the same by issuing bonds which shall not be issued upon the credit of the city but on the credit of the " authority " alone. The local law assumed to be authorized by the enabling act attempts to establish an " authority or agency; " to establish, construct and operate an electric lighting plant with a capacity of 140,000 K. W. for supplying electricity

to public and private consumers within the territorial limits of the city of New York on a site to be provided by and owned by the city at a maximum cost of not to exceed $49,500,000 and at an estimated cost of $45,000,000, the costs to be financed by bonds of the " authority," the credit of the city not to be pledged and the city not to be liable for any deficits from the operation of the plant; the " authority " to have the power to construct the plant; to choose between purchase, lease or construction; to have the same powers and duties, liabilities and privileges as a private corporation engaged in the same or similar business. The Board of Estimate is authorized and empowered to take all necessary action to carry out and accomplish the purpose of the local law. The local law provides that it shall become operative only if a majority of the electors approve the proposition to be submitted.

The right and power of the Municipal Assembly to enact the local law and to submit to the voters the proposition thereunder is based upon the enabling act and the justification for the enactment of the local law and the submission of the proposition thereunder must be found in the language of that act (L. 1934, ch. 281), and the local law and the proposition submitted thereunder must in its primary essentials comply therewith. If, therefore, the local law itself is void, because not authorized by the enabling act and in conflict with material provisions of the General City Law, or if the proposition to be submitted does not comply with the essential requirements of the enabling act, there can be no legal basis for the enactment of the local law or the submission of the proposition as worded, as the power to enact the local law and to submit the proposition is purely statutory. (*Matter of McCabe* v. *Voorhis*, 243 N. Y. 401, 413.)

We are unable to find in the enabling act any justification or basis for the enactment of the local law which attempts to secure for the city an electric lighting plant

estimated to cost $45,000,000 without pledging the credit of the city therefor. Nowhere in the enabling act can be found any provision authorizing the " authority " to issue its bonds in payment for such a plant and, of course, it has no authority to levy taxes in payment therefor. The grant of power is to the city to erect a plant and to pay therefor. The grant is made directly to the city. The payment of the cost thereof is to be made by the city by taxation, the issuance of bonds or partly by taxation and partly by the issuance of bonds. Not only is the local law in violation of the very language of the enabling act but is also in clear violation of chapter 390 of the Laws of 1933 (General City Law, § 20, subd. 5), which reads in part: " * * * but, notwithstanding the provisions of any general, special or local law or ordinance a city shall have no power to issue obligations to which it has not pledged its faith and credit for payment of the principal and interest thereof." The enabling act does not by its terms or by implication repeal the quoted provision of the General City Law. In fact, section 363 of the enabling act specifically recognizes the continued existence of the above-quoted provision. It reads: " The provisions of law in force in such municipal corporation applicable to the purchase, acquisition, leasing and construction of the public utility service provided for in this article shall apply when not inconsistent with the provisions of this article."

The article referred to is article 14-A of the General Municipal Law.

We find no provision in the enabling act which makes the quoted provision of the General City Law inconsistent with the provisions of the enabling act.

To decide otherwise would change the whole system of municipal financing and authorize the city to build an electric lighting plant from the proceeds of bonds issued by an " authority " upon its own credit and not upon the credit of the city itself. in direct violation of section 20,

subdivision 5, of the General City Law and in violation of section 362 of the enabling act which reads: "Any municipal corporation may finance the cost of such public utility service in whole or in part by levying taxes or by the issuance of bonds in the same manner as taxes are levied or bonds are issued pursuant to law for any permanent improvement by such municipal corporation."

The local law is also in violation of that part of section 363 which provides that " Funds to be used for any of the purposes set forth in section three hundred and sixty of this article shall be paid out in the manner prescribed by law for the payment of the expenses of other public improvements authorized for and effected by the municipal corporation affected," clearly indicating that the Legislature intended that the money to be used in building such plant should be raised and paid out by a city in the same manner as funds for any other permanent public improvement. In fact, section 363 so directs: " The purchase, acquisition, leasing, and construction of such public utility service shall, in so far as is practicable, be effected by such municipal corporation in the same manner and by the same officers or boards as other authorized public improvements are effected for and by such corporation. The provisions of law in force in such municipal corporation applicable to the purchase, acquisition, leasing and construction of the public utility service provided for in this article shall apply when not inconsistent with the provisions of this article."

The appellant contends that the first sentence of section 362 heretofore quoted indicates that the authority may issue such bonds on its credit.

Emphasis is placed upon the words " in whole or in part " and it is urged that the meaning of the section is that the city may finance the construction " in part " and that the " authority " may finance the construction " in part." We are unable to agree with such interpreta-

tion of the statute. It is in direct contradiction of other parts of the act and with the provisions of the General City Law (§ 20, subd. 5). The words mean, as heretofore stated, that the city may finance such a project in part by taxation and in part by a bond issue.

Appellant also urges that the following sentence of section 363 constitutes authority for the adoption of the local law and the establishment of the authority: " The local law, ordinance or resolution provided for in section three hundred and sixty of this article may, however, provide a different method or authority or agency for the purchase, acquisition, leasing and construction of such service, not inconsistent with state law applicable thereto." We do not so read the statute. After providing the way of constructing public utility service, the statute simply provides that a local law may " provide a different method or authority or agency for the purchase, acquisition, leasing and construction of such service," not one word indicating that the " method or authority or agency " shall have authority to issue bonds upon its own credit in payment for such utility. But the appellant says that the word " authority " carries with it the implied power to issue bonds, in the same manner as other authorities have been granted express power by the Legislature so to do in other cases where authorities have been authorized by the Legislature. In other cases, many of which are referred to in the case of *Gaynor* v. *Marohn* (268 N. Y. 417), the Legislature expressly granted to the authority power to issue bonds upon its own credit. Such was the case of *Robertson* v. *Zimmermann* (268 N. Y. 52). In the absence of such express power, a city has no authority to finance a permanent, public improvement upon the credit of an agency or authority. What the city cannot do directly, an agency or authority cannot do indirectly.

In view of the conclusion which we have reached on the principal question involved, we do not deem it neces-

sary to discuss the other questions which have been argued. We entertain no doubt as to the power of the court to afford the relief which has been granted.

The order should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., not sitting.

Order affirmed.