# WHIPPS ET AL. v. TOWN OF GREYBULL

(No. 2165; February 4, 1941; 109 Pac. (2d) 805)

356

For the appellants, there was a brief by *F. A. Little* of Greybull and *Myles P. Tallmadge* of Denver, Colorado, and oral argument by *Mr. Tallmadge*.

For the respondent, there was a brief by *Joseph O. Spangler* of Greybull.

360

For the intervener, there was a brief by *Hagens &
Wehrli* of Casper, and oral argument by *Mr. Hagens.*

KIMBALL, Justice.

The question for decision is whether the town council of Greybull, without approval by the people of the town, has authority to borrow money to pay for a municipal electric light and power plant, and to issue therefor bonds to be paid solely from revenue accruing from the operation of the plant.

A town ordinance, passed in August, 1938, amended by an ordinance passed in April, 1939, provided for the issuance of bonds in the amount of $140,000 to draw interest at 5 per cent.; for delivery of the bonds to a named purchaser; for the use of the proceeds in the construction of a plant to supply the town and its inhabitants with light and power; for maintenance of the plant by the town, and for payment of the bonds

solely from receipts derived from the operation of the plant. Details of the plan as outlined in the ordinances, need not be stated. The proposition to issue the bonds was not submitted to a vote of the people.

The action, questioning the power of the town to issue the bonds, and for injunction, was commenced by Whipps, a taxpayer, suing for himself and all others similarly situated. Thereafter, the Mountain States Power Company, a public utility furnishing light and power to the town and its inhabitants, was granted leave to intervene as plaintiff, and filed its petition which, so far as it is material on the point that controls our decision, was substantially the same as the petition of Whipps.

To these petitions defendants demurred on the ground that neither of them stated facts sufficient to constitute a cause of action. The demurrers were overruled; defendants refused to plead further, and the trial court entered the order appealed from, declaring that the ordinances were invalid and enjoining proceedings thereunder.

Both plaintiffs contend that the ordinances were void because not authorized by statute, and as we are of opinion that that contention must prevail, it will not be necessary to decide or discuss any question as to the validity of the ordinances under constitutional limitations of municipal indebtedness. We shall assume that the bonds were valid if authorized by statute.

An act of the legislature of 1907 (Sess. Laws, 1907, ch. 92; C. S. 1920, ch. 142), which we shall usually call the act of 1907, provided, by section 1, that:

"In addition to the other powers conferred upon them by law, each incorporated city or town in the State of Wyoming shall have power and authority to establish, maintain and regulate electric light plants and electric power plants within the corporate limits

of such city or town, for the purpose of supplying the inhabitants of said city or town with electric lights and electric power and to light the streets and highways and public buildings of said city or town, and to furnish power for water works and other municipal works owned by and operated by such city or town."

Section 2 (C. S. 1920, § 2194) provided that the city or town, "for the purpose of providing funds for establishing, constructing, purchasing or extending" such plant or plants, "is authorized to borrow money and to issue coupon bonds of said city or town," and there were regulations as to the denomination, rate of interest, maturity dates and signing of the bonds.

Section 3 (C. S. 1920, § 2195) provided for the registration of the bonds.

Section 4 (C. S. 1920, § 2196) required the levy of an annual tax sufficient to pay interest on and to redeem the bonds.

Section 5 (C. S. 1920, § 2197) provided that: "No bonds shall be issued for the purpose provided by the act, until the proposition to issue the same shall have been submitted to the vote of the people of such city or town and by them approved," at an annual or special election. Further, that "the proposition so submitted shall specify the amount of the bonds proposed to be issued, the rate of interest and the purpose for which it is proposed to issue the bonds. At any such election the official ballot shall contain the words, 'For electric plant bonds,' and 'against electric plant bonds.' If a majority of the legal votes cast upon the proposition shall be for bonds, then such proposition shall be deemed to have been approved by the people. . ."

Sections 6, 7 and 8 (C. S. 1920, §§ 2198-2200) made regulations in regard to the redemption of the bonds and the duties of the city or town treasurer.

Sections 9 and 10 (C. S. 1920, §§ 2201, 2202) were repealed by section 179, ch. 73, Session Laws of 1931.

This act of 1907 and other acts (chapters 139, 140, 141, 143, 144, C. S. 1920), authorizing cities and towns to borrow money and issue bonds in order to construct or acquire water works, viaducts and subways, sewers, parks, etc., contained many similar provisions. By the Revision Act of 1931 (Sess. Laws, 1931, ch. 73) these various separate acts were consolidated and in the Revised Statutes of that year are contained in one article (Rev. St. 1931, art. 16, ch. 22). Section 1 of the act of 1907 is the sixth sub-division of 22-1601 of the Revision; section 2 of the act of 1907 was repealed, and the first paragraph of section 22-1605 of the Revision takes its place; the provisions of sections 3, 4, 6, 7 and 8 of the act of 1907 are embodied in substance in sections 22-1607, 22-1609, 22-1611, 22-1612 of the Revision. The prohibition of section 5 of the act of 1907, is contained in the second paragraph of section 22-1605 of the Revision, amended so as to make the introductory words read thus: "No bonds, except local improvement bonds, as provided by law, shall be issued for purpose or purposes provided by this article, until * * *."

Bonds of the kind here in question are commonly called "revenue bonds," and we shall use that term in referring to them. Sometimes, as shown by some of the cases cited below, similar contracts of municipal corporations are evidenced by written instruments called notes, warrants, certificates, orders, conditional sales contracts or the like, but we shall assume that cases cited as authority on the question to be decided are not to be distinguished on the ground that the writing was not in the form of a bond.

There is no statute that expressly authorizes a town to issue bonds for the construction of a light and power

plant, except the act of 1907, and the question is whether the power to issue revenue bonds without compliance with that act can be implied. Guiding principles may be stated in the language of Judge Dillon, often quoted by the courts:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted by express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." Dillon on Municipal Corp. (5th ed.) § 237. "Respecting the mode in which contracts by corporations should be made, it is important to observe that when, as is sometimes the case, the mode of contracting is specially and plainly prescribed and limited, that mode is exclusive and must be pursued * * *." Id. § 783. "The rule of strict construction does not apply to the mode adopted by the municipality to carry into effect powers expressly or plainly granted, where the mode is not limited or prescribed by the legislature, and is left to the discretion of the municipal authorities. In such a case the usual test of validity of the act of a municipal body is whether it is reasonable." Id. § 239.

Specific constitutional limitations on the power of a municipal corporation to incur indebtedness, do not prevent the legislature from imposing additional restrictions on the exercise of the power. State ex rel. Voiles v. Johnson County High School, 43 Wyo. 494, 508, 514, 5 P. (2d) 255, 260, 262. It is provided in the constitution that the powers of each class of municipal corporations shall be defined by general laws (art. 13,

Sec. 1), and that the legislature shall restrict the powers of such corporations to borrow money and contract debts so as to prevent the abuse of such power (art. 13, Sec. 3). The only statute called to our attention that could be of any importance on the question of implied powers of a town is subdivision 29 of section 22-1427, providing that the town may "make and establish such by-laws, ordinances, rules and regulations, not repugnant to the laws of the state, as may be *necessary* to carry into effect the provisions" of article 14 of chapter 22. This provision, if applicable to the power now in question, does not seem to liberalize the rule as stated by Judge Dillon, supra, that the corporation has those powers "necessarily or fairly implied in or incident to the powers expressly granted."

By the act of 1907, the legislature undertook (1) to grant municipal corporations the power to establish and maintain electric light and power plants; (2) to authorize them to borrow money and issue bonds to provide funds needed for the exercise of the power, and (3) to require them to do acts deemed necessary to provide for payment of the bonds. The authority to borrow money and issue bonds was restricted by the provisions of section 5 requiring approval by the people voting at an election. There was the direct prohibition: "No bonds shall be issued for the purpose" until such approval is obtained. Defendants argue that, as the legislature then had in mind only the kind of bonds payable from general revenues, the word "bonds" in this prohibitory language could have no reference to the revenue bonds, citing State v. City of Miami, 113 Fla. 280, 152 So. 6. We doubt that the prohibition should be limited in accordance with this contention. The legislature of 1931, in restating the prohibition as it now appears in section 22-1605, R. S. 1931, supra, made it inapplicable to local improvement bonds, and made no other change. But we do not think

this point is of controlling importance. If the prohibitory language be limited in accordance with defendants' contention, on the assumption that the legislatures of 1907 and 1931 were not thinking of revenue bonds, it would not follow that the town has implied power to issue revenue bonds without a vote of the people. We still have to face the fact that the only authority to borrow money is coupled with a requirement of approval by the people. If the legislature of 1907, or any of the many subsequent legislatures, had considered the question of granting authority to issue revenue bonds, it might have decided not to authorize them at all. It might have decided to authorize them only after vote of the people, as is the case in many other states. See, for example, statutes referred to in State v. McWilliams, 335 Mo. 816, 74 S. W. (2d) 363; Thomas v. McHugh, 65 N. D. 149, 256 N. W. 763. It might not have been willing to grant the authority unless it were regulated in some of many ways that seemed advisable. See ch. 32, Laws of Kansas, spl. sess. 1933. Though, as we assume, the revenue bonds in question would not be an indebtedness within the constitutional debt limitations, the contract under which they are issued imposes on the town many duties. It would be pure conjecture for us to assume that the legislature would have granted the town council unrestricted power to make such a contract. On the question of probable legislative action on this subject, it may be noted that by chapter 78, session laws of 1933, the power granted a town to acquire by condemnation, purchase or gift, the franchise and plant of a public utility is limited by a provision that proceedings to acquire the property shall not be started unless the same shall be authorized by the people at an election called for that purpose.

In looking for authority in the decisions of the courts of other states we are embarrassed by the difficulty of

telling how far the decisions may have been based on statutes different from ours. The cases that seem most nearly in point support the view that the mode of borrowing money as prescribed by the act of 1907 is exclusive and must be pursued, in accordance with the principle stated by Dillon, supra, § 783.

In Kansas, a city had power under section 12-842, R. S. 1923, originally enacted as § 3, ch. 136, Laws of 1903, to construct and operate an electric plant, and under section 12-843 of R. S. 1923, § 4 of the original act, it was granted "full power and authority to issue bonds of the city" for any and all indebtedness, obligation or liability incurred, with the proviso that no bonds should be issued except upon a vote of a majority of the electors. In Kansas Power Co. v. Fairbanks, Morse & Co., 142 Kan. 109, 45 P. (2d) 872, holding that a city, contracting to purchase machinery for use in the construction of an electric plant, had no implied power to issue "revenue certificates" payable solely from the net revenues of the plant, the court said, among other things:

"The statute (§ 12-842, supra) had its inception in the Laws 1903, c. 136, § 3. * * * In 1903 the only statutory provision whereby the funds could be raised to establish a municipal light and power plant were those conferred by section 4 of the same act. That section provided that * * * bonds of the city might be issued under prescribed regulations and limitations. Nowhere in the statute of 1903 or elsewhere is the project of procuring a municipal light plant without a bond issue specifically sanctioned, doubtless for the reason that in 1903 the instances of a city having sufficient funds available for such a purpose were so rare that it did not challenge legislative attention. And under R. S. 12-842 * * *, if the city had the money on hand or in sight, it might be lawful to purchase, construct or acquire a power and light plant without a bond issue.

Such an unusual situation apparently would permit a city government to embark on municipal ownership and operation of a light and power plant without a vote of the people—a result which probably the legislature never anticipated. Be that as it may, where the city does not have the money, or the money in sight through a levy already made, it seems clear that section 4 of chapter 136 of the act of 1903, as revised in R. S. 12-843, is the proper course for the city to pursue * * *. Defendants contend that the method prescribed by this section for meeting any and all indebtedness, obligation or liability * * * is not exclusive; * * *. It seems clear to the court that since a specific method of financing the establishment of a municipal light and power plant is prescribed by statute, and the statutory method gives no sanction to the proposed method of payment challenged in this action, the contract is illegal in its main features, and this court must so hold."

See, also Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649; Ahren v. Richardson County, 127 Neb. 659, 256 N. W. 515; Hesse v. City of Watertown, 57 S. D. 325, 232 N. W. 53; Tierney v. Cohen, 268 N. Y. 464, 198 N. E. 225; Lassen Municipal Utility Dist. v. Hopper, 5 Cal. (2d) 18, 53 P. (2d) 347; Van Eaton v. Town of Sidney, 211 Ia. 986, 231 N. W. 475, 71 A. L. R. 820; State v. McWilliams, 335 Mo. 816, 74 S. W. (2d) 363; Fairbanks Morse & Co. v. City of Wagoner, (on rehearing) 86 F. (2d) 288.

Defendants argue that the town had power to construct the plant under an act of 1888 which prescribed no method for carrying the power into effect; therefore, the town had implied power to borrow money on revenue bonds, a reasonable method of exercising the power, and that the method prescribed by the later act of 1907 is merely permissive and cumulative, and not exclusive.

This argument, if otherwise valid, falls with a rejection of the first stated premise. The act of 1888, now section 22-1427, R. S. 1931, (enacted in 1888, Sess. Laws, 1888, ch. 43, section 7) granted to towns power, "to provide for and regulate the lighting of the streets and the erection of lamp posts." We cannot hold that the power to construct a public utility plant, such as is contemplated by the town of Greybull, and to borrow the large sum of money necessary to pay for it, can reasonably be implied from the power to provide for lighting the streets and the erection of lamp posts. In Christensen v. City of Fremont, 45 Neb. 160, 63 N. W. 364, the court considered a power granted in the same language, and held that though the power to erect a plant to supply lights for purely municipal purposes might be implied, the power to construct a plant to supply lights for private buildings must rest on a later statute that granted power to construct a plant "for lighting the city." See, also, Spaulding v. Inhabitants of Peabody, 153 Mass. 129, 26 N. E. 421; Hyatt v. Williams, 148 Cal. 585, 84 P. 41. On this point it seems important that, as shown by an examination of the various statutes consolidated in R. S. 1931, article 16 of chapter 22, cited above, the legislature, when granting a municipal corporation a power likely to require the borrowing of money for its exercise, has consistently granted the power by clear language and required consent of the people to the issuance of bonds for the borrowed money. Until the act of 1907, there was nothing in the statutes, and no fact of which we have knowledge, to indicate that either the towns or the legislature believed that under subdivision 32 of section 22-1427 towns were authorized to construct electric light and power plants and issue bonds to pay therefor. We must hold that the legislature by the act of 1907 intended to grant a new power, and was not

merely providing a method of exercising a power that already existed.

We cannot undertake to discuss in this opinion the many cases cited by defendants, but venture to suggest reasons for distinguishing a few that are most emphasized on the question of the town's statutory power to issue the bonds.

The power of cities in Utah to issue securities payable exclusively from income from utilities that they own and operate has been discussed at length in several cases upon which defendants rely with considerable confidence. Barnes v. Lehi City, 74 Utah 321, 279 P. 878; Fjeldsted v. Ogden City, 83 Utah 278, 28 P. (2d) 144; Utah Power & Light Co. v. Provo City, 94 Utah 203, 74 P. (2d) 1191, and Utah Power & Light Co. v. Ogden City, 95 Utah 161, 79 P. (2d) 61. A good deal of the discussion in these cases is in regard to questions not now before us. In so far as the Utah cases hold that revenue bonds may be issued without compliance with statutes requiring a vote of the people, we think they may be distinguished from the present case because of differences in the statutes. Before any of the Utah cases were decided, cities were authorized to construct, maintain and operate electric light works by a statute (§ 570-14, C. L. 1917, § 15-8-14, R. S. 1933) which, the court holds, is entirely independent of statutes (§§ 792 to 794, C. L. 1917, §§ 15-7-7 to 15-7-9, R. S. 1933) requiring approval of bonds by the people. In Utah Power & Light Co. v. Provo City, supra, at p. 214 of 94 Utah, p. 1196 of 74 P. (2d), it is said: "Section 15-8-14 does not require a bond issue, an election or any particular method. It gives the cities (not towns) power to construct and operate electric light works or authorize their construction etc. There were no methods set out for the construction or for the payment of the construction. * * * There were no details or methods linked with the

power. Therefore, the power to use such methods and means which were appropriate to carry out such power was implied." In view of these remarks, we think the Utah cases, to say the least, are doubtful authority in the case at bar, unless we hold (as we refuse to do) that the power "to provide for and regulate the lighting of the streets and the erection of lamp posts" gave the town power to construct and operate a public utility to supply light and power for the town and its inhabitants and to borrow money for that purpose. It may be worthy of note that when the legislature of Utah specifically authorized the issuance of revenue bonds for the purchase of utilities, there was a provision whereby the question could be submitted to the voters for approval. Laws of Utah, 1933, 2d spl. sess. ch. 22, sec. 13.

Lang v. Cavalier, 59 N. D. 75, 228 N. W. 819, may be distinguished on the same ground. A city had bought an electric generating plant and issued therefor "pledge orders" payable solely from the profits of the plant. An act of 1913 (C. L., N. D. 1913, § 3599) gave the city power to purchase, erect and maintain an electric plant, and it was conceded that this was a general grant of power with no direction as to the method of payment for the plant. It was held that the city had implied power to issue the pledge orders, and that the power was not denied either by a subsequent constitutional amendment which, by permissive language, authorized the city by majority vote to issue bonds upon the plant, or by a subsequent statute that, also by permissive language, authorized payment therefor by bonds to be approved by the voters, or by special assessment warrants.

In Nebraska, cities were authorized (1) to purchase, construct, maintain and improve lighting systems (§ 4396, Nebr. C. S. 1922) ; (2) to pay the "costs of such utilities" by the levy of a tax or, when such tax is

insufficient, by the issuance of bonds (§ 4397) approved by the electors and payable from taxes (§ 4398). In Carr v. Fernstermacher, 119 Neb. 172, 228 N. W. 114, it was held that a city could buy equipment to improve an electric light and power plant, already owned and operated by the city, and issue therefor warrants payable out of the net receipts of the plant, without the approval of the electors. The opinion in the case contains statements supporting defendants' contention in the case at bar. It was said, among other things, that "a grant of power to a city may imply a means of exercising it in addition to specific statutory methods without restriction as to others. . . On precedent the power to raise funds for a lighting plant by the methods mentioned in the statute is not exclusive." In a later case, however, this language was apparently disapproved. Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649, raised the question of the validity of a similar contract to pay the cost of constructing a new plant, without a vote of the electors, and it was held that the city had no power to make the contract. Carr v. Fenstermacher, supra, was distinguished on the ground that the statute did not provide specifically any method for raising funds to *improve* lighting systems, and, therefore, the city had implied power to resort to any proper method. The power to make a similar arrangement for payment of the *cost of a new plant* was denied because the statutes specifically provided methods for raising funds for that purpose. This result was reached in spite of the fact that the statute, in providing for payment from taxes or bonds, was couched in permissive language.

As we think the town had no power, expressed or implied, to issue the bonds in the manner provided in the ordinances, the judgment of the district court will be affirmed.

RINER, Ch. J., and BLUME, J., concur.